1  JASON D. SMITH, ESQ.
Nevada Bar No. 9691
2  jsmith@santoronevada.com
JAMES M. JIMMERSON, ESQ.
3  Nevada Bar No. 12599
jjimmerson@santoronevada.com
4  SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250
5  Las Vegas, Nevada 89135
Telephone:    702/948-8771
6  Facsimile:     702/948-8773
*Attorneys for Defendant Glenn Levy*

7

8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF NEVADA**

| | |
|---|---|
| BRYAN KENNY and GERARD AZOULAY; | Case No.:   2:15-cv-00410-JCM-VCF |
| Plaintiffs, | **DEFENDANT GLENN LEVY'S MOTION TO DISMISS** |
| v. | **Oral Argument Requested** |
| TRADE SHOW FABRICATIONS WEST, INC., RON SUISSA, GLENN LEVY, DOES 1-50, and ROE Corporations 1-50; | |
| Defendants, | |

16      Defendant GLENN LEVY ("Levy" or "Defendant"), by and through his undersigned

17  counsel of record, hereby submits this Motion to Dismiss which seeks dismissal Plaintiff

18  BRYAN KENNY ("Kenny") and GERARD AZOULAY's ("Azoulay") (collectively,

19  "Plaintiffs") Complaint in the above-captioned action pursuant to FED. R. CIV. P. 12 (the

20  "Motion").  This Motion is made and based upon the pleadings and papers on file herein, the

21  below memorandum of points and authorities, the exhibits attached hereto, including the

22  Declaration of James M. Jimmerson, Esq. in Support of Defendant Glenn Levy's Motion to

23  / /

24  / /

25  / /

26  / /

27  / /

28  / /

i

*SANTORO WHITMIRE*
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

Dismiss,[1] and any argument of counsel the Court may permit at any hearing scheduled on this Motion.

Dated this 22nd day of June, 2015.

<div align="right">

**SANTORO WHITMIRE**

  _/s/ Jason D. Smith_
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
*Attorneys for Defendant Glenn Levy*

</div>

<div align="left" style="writing-mode: vertical">

**SANTORO WHITMIRE**
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

</div>

---

[1] The Declaration of James M. Jimmerson, Esq. in Support of Defendant Glenn Levy's Motion to Dismiss is attached hereto as **Exhibit A**.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Since 2012, Plaintiffs Bryan Kenny and Gerard Azoulay have claimed that they have been denied their commissions from their former employer Defendant Trade Show Fabrications West, Inc. ("TSFW").  Indeed, in October 2012, Plaintiffs filed complaints with the Nevada Labor Commissioner, alleging that TSFW failed to pay them their commissions from jobs sold, totaling approximately $360,000.00.  Then, like now, Plaintiffs did <u>not</u> claim that their six-figure annual salaries went unpaid.  TSFW did not respond to Plaintiffs' complaints and the Labor Commissioner issued findings of fact and conclusions of law in Plaintiffs' favor.  Seeking to enforce the findings, in 2013, Plaintiffs each commenced civil actions in the Nevada Eighth Judicial District Court against TSFW and judgments were entered in Plaintiffs' favor. Seemingly dissatisfied with the judgments, Plaintiffs have now instituted this action to recover the same $360,000.00 in allegedly unpaid commissions—this time from Defendants Glenn Levy, Ron Suissa, in addition to TSFW.  Despite Plaintiffs' claims to the contrary, the causes of action against Defendant Levy should be dismissed.

Plaintiffs' four claims against Levy ([1] violation of the Fair Labor Standards Act ("FLSA"), [2] violation of NRS Chapter 608, [3] fraud, and [4] conversion) are equally without merit and fatally flawed, warranting dismissal.  <u>First</u>, the FLSA claim must fail for two reasons: (1) Levy is not an employer under FLSA; and (2) Plaintiffs were (admittedly) paid minimum wage.  As alleged in the Complaint, Plaintiffs were employed by TSFW at annual salaries equaling or exceeding $100,000.00.  As a result, neither Azoulay nor Kenny can credibly claim that they were denied minimum wage.  In fact, it is mathematically impossible for them to have been denied federal minimum wage and thus the claim should be dismissed.

<u>Second</u>, Plaintiffs' NRS Chapter 608 claim should be dismissed because (1) Levy is not an employer under NRS 608.011; and (2) the provisions of NRS Chapter 608 that Plaintiffs seek to enforce against Defendants do not confer a private right of action.  Instead, enforcement of NRS Chapter 608 is left to the Nevada Office of the Labor Commissioner (explaining why Plaintiffs pursued relief there in the first instance).  As such, because Levy is not subject to the

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

1

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

requirements of NRS Chapter 608 (because he was not Plaintiffs' employer), and because Plaintiffs have no private right to enforce the provisions of NRS Chapter 608 at issue, Plaintiffs' second cause of action should be dismissed.

Third, Plaintiffs' fraud claim should be dismissed as the Complaint does not contain sufficient facts which to make a showing of fraud. Not only is the Complaint utterly devoid of facts concerning the specific "who, what, where, when, and how" of the alleged fraud, but it is also bereft of allegations which could create any inference that Levy intentionally misrepresented Plaintiffs' compensation. Plaintiffs are inappropriately attempting to convert what would be an ordinary breach of contract claim against their former employer into a fraud claim against the officers of their former employer. The law does not countenance such claim manufacturing. The fact of the matter is that Levy did not defraud Plaintiffs. The failure to meaningfully plead any facts with particularity in support of a fraud claim demonstrates the frailty of the claim and consequently warrants its dismissal.

Fourth, Plaintiffs' conversion claim should be dismissed because parties may not pursue conversion claims based on allegedly unpaid wages. Nevada adopts the prevailing view that conversion claims must be founded on the taking or destruction of a person's tangible property. Money in the abstract is not personal property that may be subject to conversion. Likewise, a contractual right to payment of money is not personal property for which a conversion claim may be based. Because the claim for conversion rests on the allegation that Plaintiffs' commissions were withheld, the Complaint has not stated a viable claim for conversion. Furthermore, even if a claim for conversion could be based on unpaid wages (which it cannot), Plaintiffs' theory could only be pursued against TSFW—not Levy. Since TSFW had the alleged duty to pay Plaintiffs their commissions, Levy could not have "kept" those monies as the Complaint alleges. Because Levy could not have committed the acts as alleged in the Complaint, the conversion claim against him fails.

Finally, this is Plaintiffs' second attempt to collect their allegedly unpaid commissions. Because Plaintiffs' first-filed suits were against TSFW only, this subsequent litigation adding Defendants Levy and Suissa is improper. It is black letter law that a party may be entitled to one

bite at the apple but may not split claims amongst multiple actions.  However, this is exactly what Plaintiffs have done in failing to file suit against Levy in the initial state court actions but now are pursuing claims against Levy here.  As such, dismissal of the claims against Levy is warranted.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

In their Complaint, Plaintiffs have set forth four (4) causes of action against Levy and the other Defendants: (1) violation of the Fair Labor Standards Act;[3] (2) violations of NRS 608.016, 608.040, and 608.190; (3) fraud; and (4) conversion.  (Dkt. # 1.)[4]  The Complaint arises out of a dispute concerning whether Plaintiffs were appropriately compensated for the work they performed for Defendant TSFW.  (*Id*. at ¶ 1.)  Plaintiffs claim that they were hired as employees of TSFW and were to be compensated in the form of a fixed salary plus a percentage commission for all jobs sold for TSFW.  (*Id*. at ¶¶ 15-16.)  Specifically, Kenny agreed to work for a salary of $100,000.00 per year ($1,923.07 per week) plus a "commission of 5% or 10% of jobs sold," and Azoulay agreed to work for a salary of $193,247.60 per year ($3,716.30 per week) plus a "commission of 5% or 10% of jobs sold."  (*Id*.)  Critically, Plaintiffs do <u>not</u> claim that their respective salaries were not paid; rather the Complaint alleges that their "commission wages during [their employment] remain unpaid."  (*Id*. at ¶¶ 15-16; 22-23.)

In addition to filing suit against TSFW, Plaintiffs have also made claims against Ron Suissa and Glenn Levy, owners and officers of TSFW.  As acknowledged in the Complaint, Suissa is the President of TSFW and Levy is its Secretary and Treasurer.  (*Id*. at ¶¶ 9-10.)  Notwithstanding these admissions, and without further explanation, Plaintiffs claim that Levy and Suissa are Plaintiffs' employers pursuant to the FLSA and are subject to liability under NRS Chapter 608.  (*Id*. at ¶¶ 9-10; 27-35.)[5]

---

[2] The Statement of Facts and Procedural History is based on the allegations in the Complaint. Nothing herein should be construed as an admission of the statements in the Complaint.

[3] The Fair Labor Standards Act is codified at 29 U.S.C. §§ 201, *et. seq*.

[4] A true and correct copy of Plaintiffs' Complaint is attached hereto as **Exhibit B**.

[5] The Complaint is unclear as to whether Plaintiffs claim that Levy and Suissa are Plaintiffs' employers as defined in NRS Chapter 608.  While Plaintiffs expressly state that Defendant

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 ~ fax (702) 948-8773

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

Prior to commencing this action, Plaintiffs pursued their claims against TSFW before the Office of the Labor Commissioner and in the Nevada Eighth Judicial District Court. Specifically, Plaintiffs filed complaints for unpaid commissions and violations of NRS Chapter 608 with the Office of the Labor Commissioner in October 2012.  TSFW did not respond to the complaints and thus the Labor Commissioner issued findings of fact and conclusions of law in Plaintiffs' favor.  In an effort to enforce the Labor Commissioner's findings and reduce the same to judgment, Plaintiffs filed civil actions in Nevada's Eighth Judicial District Court against TSFW.[6]  In these actions, Plaintiffs pursued their claims against TSFW only, and did not name either Levy or Suissa as defendants.[7]  Significantly, not only did Plaintiffs refrain from including Levy and Suissa as defendants in the state court actions, Plaintiffs made no allegations of fraud, conversion, or any other tortious conduct by Levy or Suissa in the papers filed in those actions. As explained below, both the facts set forth in the Complaint as well as the procedural history of this dispute demonstrates that Plaintiffs have failed to state any claim upon which relief can be granted as against Levy.  Accordingly, Defendant Glenn Levy should be dismissed from this action.

─────── (continued)

TSFW was Plaintiffs' employer as that term is defined by NRS Chapter 608 and allege, "Defendant TSFW, Inc. is an 'employer' as that term is defined by NRS 608.011 [and that] [m]ore specifically, at all times relevant, Defendant TSFW, Inc. was Plaintiffs' 'employer,'" the Complaint also seems to imply that Levy and Suissa were Plaintiffs' employers as well under NRS Chapter 608 when they state, "Plaintiffs were employed by Defendants as 'employees' within the meaning of NRS 608.010."  (Compl. at ¶¶ 12, 28.)  While Levy disputes that he was Plaintiffs' employer (as that term is defined in NRS Chapter 608), for the purposes of this Motion only, Levy construes the Complaint to allege that he was Plaintiffs' employer under NRS Chapter 608.

[6] Kenny filed his enforcement action on September 10, 2013.  *See* **Exhibit C**, a true and correct copy of the Application for Entry of Judgment Against Respondent Pursuant to NRS 353C.150, and the exhibits attached thereto in Case No. A-13-688336-C.  Azoulay filed his enforcement action on the same date.  *See* **Exhibit D**, a true and correct copy of the Application for Entry of Judgment Against Respondent Pursuant to NRS 353C.150, and the exhibits attached thereto in Case No. A-13-688337-C.  Included in Exhibits C and D are the respective Orders from the Nevada State Labor Commissioner reflecting the procedural history of Kenny and Azoulay's complaints as well as the Labor Commissioner's findings and decision.  Attached hereto as **Exhibit E** is a true and Correct Copy of the Register of Actions from Case No. A-13-688336-C. Attached hereto as **Exhibit F** is a true and Correct Copy of the Register of Actions from Case No. A-13-688337-C.  The Court may and should take judicial notice of these records pursuant to NRS 47.130 and 47.140.

[7] *See* Exhibits C and D; *see also* **Exhibit G**, true and correct copies of the Judgments entered against TSFW in Case Nos. A-13-688336-C and A-13-688337-C, attached hereto.

### III.    LEGAL STANDARDS

**A.    <u>Standard on a Rule 12(b)(6) Motion to Dismiss</u>**

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *See Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 761 (9th Cir. 2013).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).

In reviewing a motion to dismiss, the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).[8]  However, the Court does "not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged.  *See id.* at 678-79.  "The plausibility standard is not akin to a probability requirement, but it asks for more

---

[8] When deciding a motion to dismiss, the Court may consider records that are properly the subject of judicial notice.  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  These records include "court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678.  Stated another way, it is not "enough that the complaint is 'factually neutral'; rather, it must be 'factually suggestive.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013).  Finally, "[a]lthough a district court should grant the plaintiff leave to amend if the complaint can possibly cured by additional factual allegations, dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Id.*  Applying this standard the Court should find that Plaintiffs have failed to state a claim upon which relief may be granted and thus dismiss the Complaint.

**B.**   **Rule 9(b)'s Heightened Pleading Standard**

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).  Rule 9(b)'s particularity requirement applies to state-law causes of action, including Plaintiffs' third cause of action for fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("[t]he Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.") (citations omitted). Rule 9(b)'s purpose is to guard against unsubstantiated allegations and the harm that arises from fraud claims. *Id.* at 1104 ("Rule 9(b) serves to protect professionals from the harm that comes from being subject to fraud charges.").  "Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case." *Vess*, 317 F.3d at 1104.

"To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  More than simply putting Defendants on notice of the alleged fraudulent conduct, the Complaint must "set forth an explanation as to why the statement or omission complained of was false and misleading." *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  Indeed, "Rule 9(b) would clearly be superfluous if its only function were to ensure that defendants are

- 6 -

provided with that degree of notice which is already required by Rule 8(a)." *Id.* at 1547. Certainly, "[m]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F. 2d 531, 540 (9th Cir. 1989); *Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952, 2000 U.S. Dist. LEXIS 2838, at *11 (N. D. Cal. Mar. 9, 2000) ("Merely pointing to statements and alleging their falsity does not satisfy Rule 9(b)."). The dismissal of a claim that fails to meet Rule 9(b)'s requirements is appropriate. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). In light of the foregoing, the Court should find that Plaintiffs' claims against Levy fail to meet the requisite pleading requirements and grant a dismissal.

## IV.    LEGAL ARGUMENT

### A.    Plaintiffs Have Failed to State a Claim Under FLSA

Plaintiffs' first cause of action against Levy (and all other Defendants) alleges a violation of § 206 of FLSA. (Compl. at ¶¶ 22, 23.) Specifically, Plaintiffs allege that Defendants "willfully violated Section 6 of the Fair Labor Standards Act, 29 U.S.C. § 206" by failing to pay "commission wages for work performed…" (*Id.*) However, Plaintiffs fail to establish two essential elements of their FLSA § 206 claim: (1) that Levy was Plaintiffs' employer (or the alter ego of the employer) as defined by the FLSA; and (2) that Plaintiffs were not paid the appropriate minimum wage. The failure to establish either element is fatal to this cause of action.

#### 1.    *Levy was not Plaintiffs' Employer Under FLSA*

Plaintiffs' FLSA claim fails because they do not allege facts establishing that Levy was their employer (or the alter ego of the employer). The Complaint acknowledges that Plaintiffs' true employer was TSFW and that during that time Levy was its Secretary and Treasurer. (*Id.* at ¶¶ 10, 12.) Specifically, Plaintiffs admit, "Defendant TSFW, Inc. at all times relevant, had control or custody of Plaintiffs' employment, Plaintiffs' place of employment, and was a private employer of Plaintiffs." (*Id.* at ¶ 12.) Notwithstanding this admission, Plaintiffs claim:

> Glenn Levy was at all relevant times herein Plaintiffs' employer pursuant to the FLSA 29 U.S.C. § 203(d) as he is the Secretary and Treasurer and has an ownership interest in Trade Show Fabrications West, Inc. Defendant exercised control over the nature and structure of Plaintiffs' employment relationship,

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

exercised economic control over the employment relationship, and is subject to individual liability.

(*Id.* at ¶ 18.)

Despite repeating the conclusory statement that Levy was Plaintiffs' employer under FLSA, the Complaint is devoid of facts that would substantiate the claim. The allegations contained in Paragraph 18 are demonstrative of these pleading deficiencies. The allegations contained therein (and throughout the Complaint) are insufficient to establish that Levy was Plaintiffs' employer under FLSA and thus the claim should be dismissed.

The determination of whether an individual qualifies as an employer under FLSA is a fact-intensive inquiry. As this Court has observed:

When determining whether an employer under the FLSA, or an individual that meets the employer definition under the FLSA, meets the "economic realities" test, the court should consider the following relevant factors: (1) the power to hire and fire employees; (2) supervision and control of employee work schedules or conditions of employment; (3) determining the rate and method of payment; and, (4) maintaining employment records.

*Orquiza v. Walldesign, Inc.*, No. 2:11-cv-1374 JCM, 2013 U.S. Dist. LEXIS 84730, at *8 (D. Nev. June 14, 2013), citing *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993).

Therefore, Plaintiffs must plead facts to establish that the "economic realities" test is met and that Levy qualified as an employer under FLSA. The failure to do so warrants dismissal of the claim. The holding from *Adedapoidle-Tyehimba v. Crunch, LLC*, No. 13-cv-00225, 2013 U.S. Dist. LEXIS 113519, at *14-15 (N.D. Cal. Aug. 9, 2013) is illustrative, where the court dismissed the FLSA claim, explaining:

The allegations as to NEV and NEFC lack sufficient facts to hold them liable under the FLSA. Even assuming that NEV and NEFC co-owned Crunch, LLC and played some role in the management or oversight of Crunch, LLC's operations, **Mr. Adedapoidle-Tyehimba must still plead facts addressing the economic reality of his relationship to NEV or NEFC**, for example indicating that they in any way controlled his employment conditions or the nature of his work. He does not. **A mere allegation that a defendant co-owns the business where the plaintiff works does not, without more, establish the economic reality of an employer-employee relationship for purpose of the FLSA. Bare allegations that a defendant managed or oversaw a direct employer's operations are likewise insufficient.**

- 8 -

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

*Id.* (emphasis supplied).  Indeed, courts across the Ninth Circuit routinely dismiss FLSA claims where, as here, the complaint fails to adequately plead facts establishing that the defendant was the plaintiff's employer as defined by the FLSA.[9]

Likewise, Plaintiffs' attempt to allege that Levy was the alter ego of the other Defendants, including TSFW, must also fail as the Complaint does not contain the requisite facts to reach such a conclusion.  Indeed, the Complaint makes its perfunctory alter-ego claim using boilerplate language, stating:

> At all times relevant hereto, Defendants were the agents and/or employees and/or co-adventurers and/or partners and/or alter egos and/or predecessors and/or successors of their Co-Defendants, and in doing the acts and omissions alleged herein were acting in the course and scope of such agency, employment, co-adventure, partnership, or alter ego and with the permission, consent, and encouragement of their Co-Defendants.

(Compl. at ¶ 11.)

Such pleading is inadequate to establish alter ego.  *See Glazing Health & Welfare Fund v. Accuracy Glass & Mirror Co.*, No. 2:13-cv-01106, 2014 U.S. Dist. LEXIS 83553, at *8 (D. Nev. June 19, 2014) ("Plaintiffs' allegation that Lamek and Marshall are Accuracy's alter egos is a conclusory statement and does not factor into the Court's analysis."); *Wilson Logistics Nev., Inc. v. Lincoln Gen. Ins. Co.*, No. 2:11-cv-00225, 2011 U.S. Dist. LEXIS 124128, at *10 (D. Nev. Oct. 26, 2011) ("Plaintiffs' Complaint attempts to pierce the corporate veil using nothing more

---

[9] *See e.g. DiNicola v. SEIU, Local 503*, No. 08-6317, 2011 U.S. Dist. LEXIS 86712, at *13-14 (D. Or. Aug. 5, 2011) ("The complaint contains only the most conclusory allegation that SEIU is plaintiff's employer…. I therefore dismiss claims one and two against SEIU."); *Brouillette v. Montague Elem. Sch. Dist.*, NO. 2:14-840, 2014 U.S. Dist. LEXIS 74384, at*3 (E.D. Cal. May 29, 2014) ("By contrast, plaintiff does not allege any facts showing that Lampella had the power to hire or fire employees, determine when or how much plaintiff would be paid, or that he maintained employment records. And while plaintiff asserts that Lampella was her 'supervisor,' she does not allege any facts illustrating the extent of his supervisory responsibilities so as to allege that he was her employer.  In the absence of any factual allegations showing that Lampella was plaintiff's 'employer,' her conclusory allegation of a supervisory relationship is insufficient to state a claim against him for failure to pay overtime wages."); *Wood v. TriVita, Inc.*, No. CV-08-0765, 2009 U.S. Dist. LEXIS 63996, at *9 (D. Ariz. June 22, 2009) ("These conclusory allegations are insufficient to show that the additional defendants were joint employers for purposes of the FLSA…There are no factual allegations showing that each individual defendant had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment, and maintained employment records.").

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

than legal conclusions and conclusory assertions.   Accordingly, the alter ego claim against Walshire Assurance is dismissed."); *Allstate Prop. & Cas. Ins. Co. v. Mirkia*, No. 2:12-cv-1288, 2013 U.S. Dist. LEXIS 32372, at*28 (D. Nev. Mar. 7, 2013) (same).   For this reason alone, the FLSA claim should be dismissed.

### 2.   *Plaintiffs Were Paid Minimum Wage*

Notwithstanding that Plaintiffs have failed to properly establish that Levy was their employer (or the alter ego of their employer) under FLSA, Plaintiffs' FLSA claim should be dismissed because Defendants did not violate 29 U.S.C. § 206.[10]   The Complaint is clear— Azoulay and Kenny were paid minimum wage.

"Under the FLSA, employers must pay their employees a minimum wage." *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 579 (9th Cir. 2010).   "As long as the minimum hourly rates established by § 6 are respected, [however], the employer and employee are free to establish this regular rate at any point and in any manner they see fit." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 1245 (1945).

"The FLSA's minimum wage provision entitles employees to a wage 'not less than $7.25 an hour.' 29 U.S.C. § 206(a).   **To claim improper compensation under this provision, plaintiffs must allege that the wages received fell below this statutory minimum.**" *Samuels v. We've Only Just Begun Wedding Chapel, Inc.*, No. 2:13-cv-00923, 2014 U.S. Dist. LEXIS 46380, *7 (D. Nev. Mar. 31, 2014) (emphasis supplied).[11]   Indeed, the FLSA is not a statutory substitute for a breach of contract action so long as the employer pays its employees minimum wage.   An employee who is paid at least minimum wage may not assert an FLSA violation when his employer fails to pay the total amount of the agreed upon compensation. *See e.g. Foster v.*

---

[10] Plaintiffs' FLSA claim alleges violations of § 206 – the minimum wage statute.   (Compl. at ¶¶ 22, 23.)

[11] "The FLSA's overtime compensation provision entitles covered employees to time-and-a-half wages for hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1)." *Id.*, 2014 U.S. Dist. LEXIS 46380, at *8.   Plaintiffs are exempt from overtime protections under § 207 as they are (1) salaried and (2) their work requires the exercise of discretion and/or independent judgment and constitutes non-manual "office work directly related to management policy or general business operations of his employer or his employer's customers." *Webster v. Pub. Sch. Emples. of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001).

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

*Angels Outreach, LLC*, No. 2:06-cv-980, 2007 U.S. Dist. LEXIS 92470, at *10 (M.D. Ala. Dec. 17, 2007) ("Plaintiffs, however, seek the recovery of hourly wages between $15.00 and $35.00, amounts which substantially exceed the applicable minimum wage…[T]he court finds that Plaintiffs' request to recover unpaid wages above the statutorily-prescribed minimum wage is not authorized and exceeds the scope of 29 U.S.C. §§ 206(b) and 216(b).").[12]   Consequently, Plaintiffs' FLSA claim should be dismissed because Plaintiffs have admitted that they were paid minimum wage.

The Complaint conclusively establishes that Kenny and Azoulay were paid substantially more than minimum wage.  As discussed above, Plaintiffs do not claim that their respective salaries were not paid.  Instead, the Complaint alleges that their "commission wages during [their employment] remain unpaid."  (Compl. at ¶¶ 15-16; 22-23).  Accordingly, if Plaintiffs' salaries exceeded the $7.25 per hour minimum wage (which they did), the cause of action for the alleged violations of 29 U.S.C. § 206 should be dismissed for failure to state a claim.

The Complaint acknowledges that Plaintiff Kenny's salary was $100,000.00 per year ($1,923.07 per week) and that Azoulay's salary was $193,247.60 per year ($3,716.30 per week). (*Id*.)  Plaintiffs' substantial salaries make it mathematically impossible for them to have been denied minimum wage.  Under the law minimum wage is $7.25 per hour.  With 168 hours in a week, an employee making $7.25 per hour who works every single hour in a week (an impossibility) would make $1,218.00 per week—hundreds less than Kenny's weekly salary of $1,923.07 or Azoulay's weekly salary of $3,716.30.  Even with an overtime pay increase (time-and-a-half) pursuant to § 207 (a section Plaintiffs do not claim was violated), Plaintiffs' salaries

---

[12] Courts universally hold that an employee cannot succeed on a claim under the FLSA if his average wage for a period in which he works no overtime exceeds minimum wage.  *See Blankenship v. Thurston Motor Lines*, 415 F.2d 1193, 1198 (4th Cir. 1969); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Cuevas v. Monroe Street City Club, Inc.*, 752 F. Supp. 1405, 1417 (N.D. Ill. 1990); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985); *Travis v. Ray*, 41 F. Supp. 6, 8 (W.D. Ky 1941); *Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 301-303 (N.D.N.Y 1978); *Bolick v. Brevard Cnty. Sheriff's Dep't*, 937 F. Supp. 1560, 1568 (M.D. Fla. 1996); *accord., Hensley v. MacMillan Bloedel Containers*, 786 F.2d 353, 357 (8th Cir. 1986);

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

- 11 -

still exceed the amount required under the FLSA.[13]  *See Samuels*, 2014 U.S. Dist. LEXIS 46380, at *8 ("The FLSA's overtime compensation provision entitles covered employees to time-and-a-half wages for hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).").[14]

Because Kenny and Azoulay do not allege that they were denied their weekly salaries (instead claiming that Defendants did not pay them their commissions), the FLSA claim fails. Kenny and Azoulay's six-figure salaries greatly exceed the $7.25 per hour minimum wage and thus no violation of 29 U.S.C. § 206 has been stated.  Accordingly, Plaintiffs' first cause of action should be dismissed.

**B.      Plaintiffs Have Failed to State a Claim Under NRS Chapter 608**

The Complaint's second cause of action is for alleged violations of NRS Chapter 608. (Compl. at ¶¶ 27-35.)  Specifically, Plaintiffs state that the claim "arises from Defendants' violation of NRS 608.005, *et. seq*, for its failure to pay lawful wages to Plaintiffs including but not limited to paying Plaintiffs owed and promised commission payments in violation of NRS 608.005 *et. seq*."  (*Id.* at ¶ 27.)  The Complaint identifies three sections of NRS Chapter 608 that were allegedly violated by Levy (and the other Defendants): NRS 608.016, NRS 608.190, and NRS 608.040.  (*Id.* at ¶ 33.)  However, much like Plaintiffs' FLSA claim, the Complaint does not properly state a cause of action for any violations of NRS Chapter 608 as against Levy.  In particular, not only does the Complaint fail to establish that Levy was Plaintiffs' employer (or

---

[13]  Plaintiffs do not claim that they were denied overtime pursuant to § 207; they only allege a violation of § 206, nonpayment of minimum wage.  (Compl. at ¶¶ 22, 23.)  That notwithstanding, even if Plaintiffs alleged a violation of § 207, such a claim would also warrant dismissal as Plaintiffs are exempt from overtime protections under § 207.  Plaintiffs are exempt because (1) they are salaried; and (2) their work requires the exercise of discretion and/or independent judgment and constitutes non-manual "office work directly related to management policy or general business operations of his employer or his employer's customers."  *Webster v. Pub. Sch. Emples. of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001).  Plaintiffs acknowledge that they were paid to sell jobs to outside customers.  (Compl. at ¶¶ 15, 16.)  Such jobs are exempt from the provisions of § 207.  *See Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 400-01 (9th Cir. 2011).

[14]  Working the first 40 hours of the week at the $7.25 minimum wage, a worker would make $290.00.  And assuming a worker could and would work the rest of the 128 hours in the week (again, an impossibility), at time-and-a-half, that worker would make an additional $1,392.00 in overtime pay, totaling $1,682.00 for the 168 hour week—still less than Kenny and Azoulay's salaries.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

- 12 -

the alter ego of their employer), but also the sections of NRS Chapter 608 Levy allegedly violated confer no private cause of action. Each of these defects warrants dismissal of the claim.

### 1. *Levy was not Plaintiffs' Employer Under NRS Chapter 608*

Plaintiffs' second cause of action suffers from the same deficiencies as the first—namely, the failure to adequately plead facts to establish that Levy was their employer under NRS Chapter 608. As enunciated above, the Complaint does not expressly claim that Levy was Plaintiffs' employer under NRS 608.011. To the contrary, the Complaint specifically states that TSFW was Plaintiffs' employer for the purposes of NRS Chapter 608. (*Id*. at ¶ 12.) This admission notwithstanding, Plaintiffs implicitly claim that Levy was also Plaintiffs' employer under NRS 608.011 when they state, "Plaintiffs were employed by Defendants as 'employees' within the meaning of NRS 608.010." (*Id*. at ¶ 28.) To the extent that Plaintiffs' claim is based upon the assertion that Levy was Plaintiffs' employer as defined by NRS 608.011, the claim should fail since (1) the Complaint does not contain adequate facts to support this legal conclusion, and (2) as a matter of law, Levy, as an owner and officer of TSFW could not be Plaintiffs' employer under NRS Chapter 608.[15]

This cause of action should be dismissed because the Complaint contains no facts that establish that Levy was Plaintiffs' employer under NRS Chapter 608. Similar to the Complaint's deficiencies concerning Levy's status as an employer as defined by FLSA, the Complaint provides no factual basis to support the allegation that Levy was Plaintiffs' employer as defined by NRS 608.011. Simply alleging, "Plaintiffs were employed by Defendants…" is insufficient. *See e.g. Adedapoidle-Tyehimba*, 2013 U.S. Dist. LEXIS 113519, at *14-15. Plaintiffs must support this legal conclusion with appropriate facts. *Id*. The failure to do so warrants dismissal of the claim. *Id*.[16]

---

[15] To the extent that the Complaint is construed as not alleging that Levy is not Plaintiffs' employer as defined by NRS 608.011, the second cause of action should be dismissed as NRS establishes duties for employers only—not the owners, officers, or managers of the employer. *See Boucher v. Shaw*, 124 Nev. 1164, 1170, 196 P.3d 959, 963 (2008) ("individual corporate managers are not personally liable, as employers, for unpaid wages.").

[16] This analysis applies with equal force to the allegation that Levy was TSFW's alter ego. (Compl. at ¶ 11.) The failure to plead facts establishing the basis for this legal conclusion

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

1   Moreover, even if the Complaint were to contain factual allegations to support the

2   conclusion that Levy was Plaintiffs' employer for the purposes of NRS Chapter 608, Nevada law

3   bars such a conclusion.  NRS 78.747 shields individual shareholders, officers and directors from

4   being liable for the debts and obligations of the corporation.  NRS 78.747 states, "[e]xcept as

5   otherwise provided by specific statute, no stockholder, director or officer of a corporation is

6   individually liable for a debt or liability of the corporation, unless the stockholder, director or

7   officer acts as the alter ego of the corporation."  *Id.*  Therefore, as a matter of corporate law,

8   Levy cannot be liable for the obligations of TSFW, including the obligation to pay its employees.

9   The Nevada Supreme Court held the same when specifically considering whether an

10  officer, director, or manager could be liable for failing to pay employee wages as required by

11  NRS Chapter 608.  In *Boucher v. Shaw*, 124 Nev. 1164, 1170, 196 P.3d 959, 963 (2008), the

12  Nevada Supreme Court explained:

13          This interpretation of NRS 608.011 [defining "employer"] closely
            accords with long-standing principles of corporate law.  Generally,
14          a corporate officer is not considered the employer responsible for
            creating the contractual employment relationship and is not
15          personally liable for a breach of that relationship.  Under Nevada
            corporate law, individual liability does not extend to officers,
16          directors, or stockholders of a corporation "[e]xcept as otherwise
            provided by specific statute."  Therefore, without evidence that the
17          Legislature specifically intended to disregard these well-
            established principles of our corporate law, extending personal
18          liability to corporate officers or agents would be, in the words of
            the Colorado court, "merely an insertion of policy considerations
19          not expressed by the legislature."  In sum, NRS 608.011 does not
            contain specific language that extends personal liability to
20          individual managers.

21  *Id.*

22  Multiple courts have relied upon this holding when dismissing NRS 608 claims filed

23  against individual officers, directors, or managers of a corporate employer.  *See Guy v. Casal*

24  *Inst. of Nev., LLC*, No. 2:13-cv-02263, 2015 U.S. Dist. LEXIS 1191, at *7-8 (D. Nev. Jan. 5,

25  2015), citing *Boucher*, 124 Nev. at 1170 ("the Nevada Supreme Court has held that 'individual

26  corporate managers are not personally liable, as employers, for unpaid wages.'  Consequently, I

27  _____ (continued)

supports the Court disregarding the allegation.  *See e.g. Glazing Health*, 2014 U.S. Dist. LEXIS
28  83553, at *8.

- 14 -

will grant the defendant's motion in this regard and dismiss the individual defendants in their personal capacity, leaving Aveda as the only remaining defendant."); *accord.*, *Hernandez v. Hillsboro Enters.*, No. 2:12-cv-00575, 2013 U.S. Dist. LEXIS 139388, at *15-16 (D. Nev. Sept. 26, 2013).  This Court should do the same.

### 2. *There is No Private Right of Action to Enforce NRS 608.016, 608.190, and 608.040*

In addition to dismissing Plaintiff's second cause of action because the Complaint cannot establish Levy's liability for TSFW's alleged violations of NRS Chapter 608, the cause of action should be dismissed because Plaintiffs have no private right of action to prosecute violations of NRS 608.016, 608.190, and 608.040.  The Nevada Supreme Court held as much in *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 194 P. 3d 96 (2008).

In *Baldonado*, the Nevada Supreme Court considered whether there was a private right of action to enforce NRS 608.160.  *Id.*, 124 Nev. at 954.  In finding that no such private right of action exists, the court relied upon the provision in NRS 608.180 which leaves enforcement of NRS 608.005 through 608.195, exclusively to the Office of the Labor Commissioner.  The court ultimately found that where an administrative remedy is provided, a private right of action is not implied, stating:

> In Nevada, the Legislature has entrusted the labor laws' enforcement to the Labor Commissioner, unless otherwise specified.  With respect to NRS 608.160, the Legislature has expressly ordered the Labor Commissioner to enforce that statute: NRS 608.180 provides that "[t]he Labor Commissioner or his representative shall cause the provisions of NRS 608.005 to 608.195, inclusive, to be enforced."  The Labor Commissioner may direct the district attorney, the Deputy Labor Commissioner, the Attorney General, or special counsel to "prosecute the action for enforcement according to law."
>
> * * *
>
> As other courts have recognized, when an administrative official is expressly charged with enforcing a section of laws, a private cause of action generally cannot be implied.  Here, the fact that the Legislature has ordered the Labor Commissioner to enforce NRS 608.160 weighs heavily against finding any intent to create a private remedy.
>
> * * *

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

- 15 -

1

> As no private remedy is implied under NRS 608.160, appellants
> had no right to obtain relief in the district court under that statute.

*Id.* at 961-64 (citations omitted).

Applying *Baldonado* to the various provisions of NRS Chapter 608, federal courts regularly hold that no private right of action exists to enforce the same.  *See e.g. Garcia v. Interstate Plumbing & Air Conditioning, LLC*, No. 2:10-cv-410, 2011 U.S. Dist. LEXIS 14701, at *19-22 (D. Nev. Feb. 4, 2011) (finding no private right of action under NRS 608.018 or 608.019).  Specifically as it pertains to the alleged violations in the Complaint, the prevailing view is that there is no private right of action under NRS 608.016, 608.190, and 608.040.[17]

### a.    NRS 608.016 may not be privately enforced

There is no private right of action to enforce NRS 608.016.  Applying the reasoning from *Baldonado*, the court in *Miranda v. O'Reilly Auto. Stores, Inc.*, No. 2:14-cv-00878, 2014 U.S. Dist. LEXIS 118931, at *6 (D. Nev. Aug. 26, 2014) found no private right of action exists to enforce NRS 608.016, explaining:

> In ruling that there was no private right of action under sections 608.100, 608.160, and 613.120, the *Baldonado* Court indicated that the Labor Commissioner's authority covered sections 608.005 to 608.195 and that when an administrative official is expressly charged with enforcing a section of laws, a private cause of action generally cannot be implied.   In light of *Baldonado's* broad language and warning against lightly implying private causes of action, the Court believes that sections 608.016, 608.018, and 608.020-.050 are within the Labor Commissioner's exclusive jurisdiction, just as section 608.100 is.

*Id.* (citations omitted).

This Court has repeatedly held the same—that no private right of action exists under NRS 608.016.  In *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-1009 JCM (PAL), 2014 U.S. Dist. LEXIS 78069, at *10 (D. Nev. June 6, 2014), this Court held, "no private right of action exists to enforce labor statutes arising from NRS §§ 608.010 *et. seq* and 608.020 *et. seq.*"  *Id.* (citing this

---

[17] Plaintiffs know that there is no private right of action to enforce NRS 608.016, 608.190, and 608.040 as demonstrated by the prior filing of their complaints with the Labor Commissioner. *See* Exhibits C-G.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

Court's earlier decision in *Dannenbring v. Wynn Las Vegas, LLC*, 907 F. Supp. 2d 1214, 1218-19 (D. Nev. 2013)); *see also Cardoza v. Bloomin' Brands, Inc.*, No. 2:13-cv-01820, 2014 U.S. Dist. LEXIS 103874, at *5 (D. Nev. July 30, 2014) ("[N]either NRS 608.016 nor 608.018 expressly creates a private right of action for the enforcement of these statutory provisions."). Considering these holdings (including those from this Court), there should be no dispute that there is no private right of action under NRS 608.016 and this Court should dismiss the claim alleging violation of the same.

### b.   There is no right to sue for violations of NRS 608.190

Likewise, no private right of action has been created to enforce NRS 608.190.  Once again, relying on the statute's provision that the Labor Commissioner is tasked with enforcing NRS 608.005 to 608.195 (which includes NRS 608.190), the court in *Kora v. Renown Health*, No. 3:09-cv-176, 2011 U.S. Dist. LEXIS 45456, at*15-16 (D. Nev. Apr. 25, 2011) held that there was no private right of action under NRS 608.190.  There the court held:

> NRS 608.190 does not create a private right of action.  In this regard, NRS 608.180 expressly provides that the "Labor Commissioner or the representative of the Labor Commissioner shall cause the provisions of NRS 608.005 to 608.195, inclusive, to be enforced…"  That provision further provides that "upon notice from the Labor Commissioner" either the district attorney, Deputy Labor Commissioner, Attorney General or special counsel "shall prosecute the action for enforcement according to law."  NRS 608.180…Therefore, Plaintiff lacks standing to pursue a private action under this provision, and summary judgment is appropriate.

*Id.* Just as this Court applied the reasoning in *Baldonado* to find that there was no private right of action to enforce NRS 608.016, the Court should similarly conclude that there is no private right of action for enforcement of NRS 608.190.

### c.   NRS 608.040 is only enforced by the Labor Commissioner

Finally, this Court has previously held that there is no private right of action to enforce NRS 608.040 and it should do so again here.  In *McDonagh v. Harrah's Las Vegas, Inc.*, No. 2:13-CV-1744 JCM, 2014 U.S. Dist. LEXIS 82290, *10 (D. Nev. June 17, 2014) this Court considered whether there was a private right of action to enforce NRS 608.040.  In finding that no such private right of action exists, this Court stated, "Notably, NRS 608.180 charges the labor

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

commissioner with enforcement of NRS 608.005-608.195, which this court finds persuasive to imply that no private rights of action exist for the included statutes." *Id*.  The Court should reaffirm its previous holding that there exists no private right of action to enforce these labor statutes and dismiss Plaintiffs' second cause of action.

**C.** **Plaintiffs Have Failed to Appropriately State a Claim for Fraud**

Plaintiffs' third cause of action is for fraud.  (Compl. at ¶¶ 37-42.)  Specifically, Plaintiffs allege, "Defendants falsely represented to Plaintiffs that Plaintiff would receive an amount on the total of the commission payments due and owing.  Plaintiff reasonably relied on such representations.  Despite these representations, Defendants never intended to provide Plaintiffs with their commission payments."  (*Id.* at ¶ 37.)  This claim should be dismissed as the Complaint fails to comply with the heightened pleading requirements of FED. R. CIV. P. 9.

First, the Complaint is devoid of the particularized allegations setting forth the "who what, when, where, and how of the misconduct charged…"  *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011).   The Complaint does not identify the particular representations at issue; it does not specify when or where the alleged representations were made; and it does not specifically name the individuals who made the representations—all of which is required to satisfy Rule 9(b).  Indeed, Plaintiffs simply group all Defendants together and allege that they "falsely represented to Plaintiffs that Plaintiff would receive an amount on the total of the commission payments due and owing."  (Compl. at ¶ 37.)  This form of pleading is inappropriate on its face and warrants dismissal.  *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming district court's dismissal, holding, "Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant.").

Second, the Complaint lacks particularized allegations explaining how the alleged statements concerning the payment of commissions were false **at the time they were made**.  Without such allegations, the claim for fraud should be dismissed.  *See In re Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension Fund GCC/IBT v. Deleage*, 697 F.3d 869, 876 (9th Cir. 2012) (affirming dismissal of fraud claim, holding, "Rule 9(b) requires particularized allegations [as to]

- 18 -

**why the statements were false or misleading at the time they were made.**"). As the Court knows, fraud may not be retroactively manufactured by later events. As stated by the Ninth Circuit in *Ronconi v. Larkin*, 253 F.3d 423, 430 n. 12 (9th Cir. 2001), "Fraud by hindsight is not actionable." *Id.* (affirming dismissal of fraud claim). Therefore, because there are no particularized allegations explaining how Defendants' statements were false at the time they were made, the fraud claim must fail.

_Third_, it is black letter law that merely alleging that Levy had no intention to be bound or fulfill his promises when the representations were made is insufficient to survive Rule 9(b)'s requirements. *See Tallman v. First Nat'l Bank of Nevada*, 66 Nev. 248, 259, 208 P.2d 302, 307 (1949); *HSU v. Oz Optics, Ltd*., 211 F.R.D. 615, 620 (N.D. Cal 2002) (a plaintiff "must point to *facts* which show that defendant harbored an intention not to be bound by terms of the contract at formation") (emphasis supplied). In *Tallman*, the Nevada Supreme Court made clear that conclusory allegations, like those made by Plaintiffs, are insufficient to maintain a fraud claim. There, the plaintiff alleged that statements made by the defendant were "made without any intention of carrying out said promises." 66 Nev. at 259. The Court held that "[t]here are no facts alleged upon which this belief is founded and consequently no proper pleading of fraud." *Id.*; *see also Hale v. Burkhardt*, 104 Nev. 632, 637, 764 P.2d 866, 869 (1988) (affirming dismissal and holding that when required to plead with particularity, "conclusory statements hint[ing] at… misrepresentations" are insufficient. "The factual basis" of the wrongful conduct must be "set out with particularity."); *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 634, 137 P.3d 1171, 1180 (2006) (holding that to plead with particularity, more than conclusory statements must be made).[18]

---

[18] This holding is nigh universal as courts across the country hold the same. *See e.g. Sami Bahar v. Prof. Network Sys.*, No. 85 Civ. 3814, 1987 U.S. Dist. LEXIS 890, at *7 (S.D.N.Y. Feb. 10, 1987) ("To allege, without more, that a defendant knew or should have known that a particular representation was false does not satisfy Rule 9(b)."); *Epitech, Inc. v. Cooper Wiring Devices, Inc.*, No.: 11-cv-1693, 2012 U.S. Dist. LEXIS 3439, at *7 (S.D. Cal. Jan. 10, 2012) ("For example, in explaining 'how' the fraud occurred, Plaintiff states that Cooper made the promise concerning a price drop, then simply concludes: 'This promise was false made [sic] without the intention of performing it. At the time Cooper Defendants made this promise Cooper Defendants had no intention of performing it.' Without more, Plaintiffs' theory cannot survive past the pleading stage.").

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

In sum, Plaintiffs may not convert a claim for breach of contract into a fraud claim by simply alleging that Defendants did not pay the commissions as promised.  Indeed, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Ardente, Inc. v. Shanley*, No. C 07-4479, 2010 U.S. Dist. LEXIS 11674, at *26 (N.D. Cal. Feb. 10, 2010); *Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952, 2000 U.S. Dist. LEXIS 2838, at *12 (N.D. Cal. Mar. 14, 2000) (dismissing fraud claim, holding that Rule 9(b) must be enforced otherwise "anyone with a breach of contract claim [may] allege tort damages by alleging that the promises broken were never intended to be performed."); *In re Hampton*, No. KS-08-067, 2009 Bankr. LEXIS 427, at *9 (10th Cir. Mar. 11, 2009) ("[T]he mere fact that Debtor failed to fulfill contractual obligations, without more, is insufficient to support a claim of fraud.").  Because Plaintiffs have failed to plead with particularity the facts establishing how Defendants knew that the representations at issue were false at the time they were made, the fraud claim should be dismissed.

**D.**     **Plaintiffs Have No Claim for Conversion**

Plaintiffs' fourth and final claim is for conversion.  (Compl. at ¶¶ 44-53.)  Plaintiffs specifically allege:

> Defendants informed Plaintiffs that their commission payments were being withheld.  Defendants withheld these sums and converted them by refusing to pay Plaintiffs, who owned and/or had the right to own and had the legal right to hold, possess, and dispose of the withheld commissions and/or wages and Plaintiffs relied on this statutory right.  Plaintiffs gained the right to hold, possess, and dispose of the compensation/wages/commissions as Plaintiffs earned these wages during the relevant time period.

(*Id*. at ¶ 47.)  Notwithstanding these allegations, Plaintiffs have no claim for conversion.

To state a claim for conversion, Plaintiffs must set forth facts establishing "[1] a distinct act of dominion wrongfully exerted over another's personal property; [2] in denial of, or inconsistent with his title or rights therein or [3] in derogation, exclusion, or defiance of such title or rights." *See Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 5 P.3d 1043, 1048 (2000).

However, a conversion claim may not be maintained where, as here, the alleged "dominion wrongfully exerted over another's personal property" is manifested by the refusal to

make payment pursuant to a contract or agreement between the parties.[19]  It is black letter law that "[n]onpayment of a debt is of course not a conversion of the amount owed."  *Id.*, 1 Dobbs, Torts § 72 at 205.  Indeed, "[t]he defendant who fails to pay a debt is not a converter of the money withheld; he is simply liable or not according to the contract's terms…"  *Id.*, 3 Dobbs, Torts § 713 at 813-14.  Finally, "[i]nterference with economic rights unattached to specific property may be actionable, but under the traditional rule, not as 'conversion.'"  1 Dobbs, Torts § 63 at 174, 2d ed. (2011); *accord. G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.,* 460 F. Supp. 2d 1246, 1261-62 (D. Nev. 2006) (conversion claim dismissed when payments owed under contract were withheld).[20]

Nevada law is clear that where the duty to act arises from the parties' contract, the failure to properly discharge that duty cannot be enforced through a tort claim.  *See Walser v. Moran*, 42 Nev. 111, 160, 180 P. 492, 1153, 173 P. 1149, 1153 (1918) ("if there be no legal duty except as arising from the contract…there is no tort, and the party must rely upon the agreement alone.").  In other words, one may not manufacture a tort claim out of the failure of another to satisfy its

---

[19] Plaintiffs' relationship with TSFW was contractual in nature. "Employment…is a contractual relationship and thus governed by contract law." *Vancheri v. GNLV Corp.*, 105 Nev. 417, 421, 777 P.2d 366, 369 (1989); *see also Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 211, 61 P.3d 557, 568 (Idaho 2002) ("The present case involves a dispute relating to an employment relationship, which is inherently contractual in nature.").  In an employment relationship, each party's duties and obligations are established by mutual agreement—the worker agrees to provide services in exchange for wages and compensation. *See Daniels v. FRB*, No. 98 C 1186, 2003 U.S. Dist. LEXIS 11484, at *8-9 (N.D. Ill. July 2, 2003) ("the employment at-will contractual relationship covers wages, benefits, duties, and working conditions.  It is well recognized that an employee at-will relationship with her employer consists of the rendition of services in exchange for her employer's payment of wages.") (citations omitted).  Plaintiffs' Complaint expressly acknowledges the terms of Plaintiffs' arrangement with TSFW.  Plaintiffs were "hired as salaried employee[s] with an established rate of pay…plus commission of 5% or 10% of jobs sold."  (Compl. at ¶¶ 15, 16).  Further, "Plaintiffs were instructed to work, and performed such work, with the expectation that they would be paid a commission amount and lawful wages for such work." (*Id.* at ¶ 31.)  Such mutuality of obligation is the hallmark of a contractual relationship. *See United Servs. Auto Ass'n v. Schlang*, 111 Nev. 486, 492, 894 P.2d 967, 970 (1995); *In re Cent. Ill. Energy, L.L.C.*, 482 B.R. 772, 786 (Bankr. C.D. Ill. 2012) ("Mutuality of obligation is the hallmark of a bilateral contract.").

[20] This analysis from Dobbs quashes the viability of Plaintiffs' cause of action for conversion as Plaintiffs expressly allege in that claim that Defendants "unlawfully interfered with Plaintiffs' rights to be compensated, and to own, possess, and/to control disposition of said sums." (Compl. at ¶ 48.)  Because Plaintiffs' claim rests on the alleged entitlement to an amount of money in the abstract, Plaintiffs may not recover the same under a claim for conversion.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

obligations under the parties' agreement or arrangement.  As stated by the court in *Yerington Ford, Inc. v. GMAC*, 359 F. Supp. 2d 1075, 1083 (D. Nev. 2004), "if a duty to perform is imposed by contract, then the violation of that same duty cannot also be the basis of a tort claim. Therefore, a tort claim is only viable where the duty alleged to have been violated is independent of, or not arising out of, a duty imposed by the contract." *Id*.  Because Plaintiffs' claims arise out of TSFW's alleged failure to pay the agreed upon commissions, Plaintiffs may not assert common law tort claims to enforce the agreement.[21]

The prevailing view is that common law conversion claims may not be based upon the failure to pay wages as required by law.  For example, in *Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95 (Kan. 1980), the court considered a claim by an employee against the employer for withholding money from the employee's wages without authorization.  In holding that the employer's action did not constitute the tort of conversion, the Court ruled, "[a]n action will not lie for conversion of a mere debt or chose in action.  Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." *Id*., 605 P.2d at 99.[22]

Similarly, *Ehrlich v. Howe*, 848 F. Supp. 482 (S.D.N.Y. 1994), involved a case where a former partner brought an action against his law firm, alleging that his discharge violated ERISA and COBRA, and, *inter alia*, alleged a claim for conversion of his deferred compensation. In dismissing the conversion claim, the District Court held in pertinent part:

> This claim is one for conversion of monies owed to Ehrlich under the Partnership Agreement.  An action for conversion of money is insufficient as a matter of law unless it is alleged that the money

---

[21]  The Complaint attempts to circumvent the requirement that a tort claim arise from an independent legal duty and not from contract by claiming that Defendants' duty to pay commissions was "imposed by statutory law…"  (Compl. at ¶ 44.)  However, Plaintiffs are mistaken; the alleged duty to pay commissions arose from the parties' agreement whereby Plaintiffs would provide services in exchange for TSFW paying them a salary and a certain percentage commission of jobs sold.  (*Id*. at ¶¶ 15, 16, 31.)  The statutory duties created by NRS Chapter 608 do not supplant or otherwise enhance the duties established by mutual agreement, but instead supplement the same by providing aggrieved parties additional remedies.  To the extent that Plaintiffs still maintain that the alleged duty to pay is grounded in the statute rather than the parties' agreement, Plaintiffs' conversion claim should be dismissed as it would be another attempt to inappropriately enforce the labor statutes through tort claims.

[22]  This holding mirrors Dobbs' analysis of the same issue.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

> converted was in specific tangible funds of which the claimant was the owner and entitled to immediate possession. **An action of conversion does not lie to enforce a mere obligation to pay money.**

*Id.*, 848 F. Supp. at 492 (emphasis supplied).

Likewise, in *Huff v. Biomet, Inc.*, 654 N.E.2d 830 (Ind. App. 1995), an executrix of an employee's estate brought an action against the employer for violating the Indiana Wage Payment Statute and for conversion. In affirming the trial court's dismissal of the conversion claim, the Indiana Court of Appeals held in pertinent part:

> Here, Huff [the executrix] seeks payment of money which was allegedly withheld from Carrell's [the employee] commissions. Huff alleges no facts which would indicate that Carrell entrusted money to Biomet for a particular purpose. Moreover…Huff has not shown that Biomet retained specific funds which could be directly attributed to Carrell. The facts alleged in Huff's complaint do not support a claim for conversion.

*Id.*, 654 N.E.2d at 836. These holdings further demonstrate that unpaid wage claims may not be enforced through a common law claim for conversion. This Court should hold the same and dismiss Plaintiffs' fourth cause of action.

Finally, notwithstanding the foregoing authority that conclusively establishes that a conversion claim is not appropriate to collect unpaid wages, the Complaint fails to adequately set forth facts that Levy, individually, converted Plaintiffs' property. The Complaint alleges, "Defendants instead kept the money owed to Plaintiffs for their own use, using such money for other purposes and distributing it elsewhere." (Compl. at ¶ 46.)[23] However, this allegation is not just implausible, it is impossible.[24] Indeed, Plaintiffs acknowledge that they were the employed by TSFW and that it had "control or custody of Plaintiffs' employment." (*Id.* at ¶ 12.) Accordingly, TSFW had the duty to pay Plaintiffs their salary and commissions. *See* NRS

---

[23] It is inappropriate "kitchen sink" pleading to allege the causes of action against all Defendants generally, leaving the Defendants to guess as to which allegations and claims truly apply to each of them. *See Tully v. Bank of Am., N.A.*, No. 10-4734, 2011 U.S. Dist. LEXIS 53011, at *20-21 (D. Minn. May 17, 2011).

[24] Notwithstanding the improper "kitchen sink" pleading, Plaintiffs' group pleading of "Defendants" and their alleged activity cannot save the claim where, as here, the nature of the claim is such that only one Defendant could have committed the alleged tort.

608.011.   To the extent any Defendant allegedly "kept" Plaintiffs' commissions, the only Defendant capable of "keeping" the same is TSFW, the entity that was purportedly obligated to make the payments to Plaintiffs.   Consequently, Levy, as an individual, could not exert any wrongful dominion over monies he was not obligated to give and could not "keep" monies he did not personally have.   Furthermore, even if this were not the case, Levy cannot be held liable for the obligations of TSFW.   *See* NRS 78.747.   As such, no claim for conversion has been stated against Levy.

**E.**     **The Complaint Should Be Dismissed as an Attempt at Inappropriate Claim-Splitting**

Plaintiffs have already sought relief for the damages they allegedly suffered arising from the alleged unpaid commissions.   Specifically, in 2012, Plaintiffs each filed a complaint with the Office of the Labor Commissioner against TSFW for alleged violations of NRS Chapter 608 (just as in this action), seeking allegedly unpaid amounts of $120,733.59 for Azoulay and $240,592.20 for Kenny.   These are the exact amounts of allegedly unpaid commissions.   (Compl. at ¶¶ 15, 16); Exhibits C and D.   The Office of the Labor Commissioner issued favorable findings of fact and conclusions of law in response to Plaintiffs' complaints.   *Id.*   After receiving such findings and conclusions, Plaintiffs each commenced a civil action seeking a judgment to enforce the same.   *Id.*   Instead of filing suit against Defendants Levy and Suissa, Plaintiffs only identified TSFW as a defendant in these actions and only sought to enforce the alleged NRS Chapter 608 violations—claims under the FLSA and common law claims for fraud and conversion were left out.   *Id.*   Accordingly, Plaintiffs should be barred from seeking the same relief against Defendants Levy and Suissa in this subsequent action.

Nevada law categorically prevents a plaintiff from splitting their claims into several suits.   Instead, a plaintiff must seek relief from all those allegedly responsible in a single action.   As stated by the Nevada Supreme Court, "[p]olicy demands that all forms of injury or damage sustained by the plaintiff as a consequence of the defendant's wrongful act be recovered in one action rather than in multiple actions."   *Smith v. Hutchins*, 93 Nev. 431, 432, 566 P.2d 1136, 1137 (1977).   The doctrinal bar against claim splitting prevents "a defendant from being harassed

- 24 -

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

by repetitive actions based on the same claim." *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) (citation omitted). Because Plaintiffs did not seek relief against Defendant Levy in its original action, their claim should be dismissed as an inappropriate attempt to split their claims.

"The Ninth Circuit applies the test for claim preclusion to determine if the bar against claim splitting applies." *Adams v. California Dep't of HealthServs.*, 487 F.3d 684, 688-89 (9th Cir. 2007) (abrogated on other grounds). This test examines "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same" in determining if a subsequent complaint is duplicative and therefore precluded. *Id*. at 689. Courts use the "transaction test" to ascertain whether successive causes of action are the same, inquiring whether two events "are related to the same set of facts and whether they could conveniently be tried together." *Id*. Claim preclusion bars the assertion of any theory of recovery that could have been asserted in the first action. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Because the first action was filed in the Nevada Eighth Judicial District Court, this Court should apply Nevada's rules governing claim-splitting/claim preclusion to determine whether this action is barred. *Id.*; *Sierra Pac. Power Co. v. Craigie*, 738 F. Supp. 1325, 1328 (D. Nev. 1990) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892 (1984)).

The Nevada Supreme Court recently reaffirmed the rule against claim-splitting in *Weddell v. Sharp*, 2015 Nev. LEXIS 35, *13-15, 131 Nev. Adv. Op. 28 (Nev. May 28, 2015). There, the court held that the principal of claim preclusion may apply to those defendants that were not named in the first lawsuit, but who were closely related to those named in the first suit, even if they were not strictly in privity with one another. *Id*. The court reasoned, "in this sense, the doctrine of nonmutual claim preclusion is designed to obtain finality and promote judicial economy in situations where the civil procedure rules governing noncompulsory joinder, permissive counterclaims, and permissive cross-claims fall short." *Id.*, 2015 Nev. LEXIS 35, at *13.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

**SANTORO WHITMIRE**
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

1    As stated by the Nevada Supreme Court, the elements of claim preclusion are: "(1) the

2 final judgment is valid,... (2) **the subsequent action is based on the same claims or any part**

3 **of them that were or could have been brought in the first case**, and (3) the parties or their

4 privies are the same in the instant lawsuit as they were in the previous lawsuit, **or the defendant**

5 **can demonstrate that he or she should have been included as a defendant in the earlier suit**

6 **and the plaintiff fails to provide a good reason for not having done so**." *Id.*, 2015 Nev.

7 LEXIS 35, *13-15 (emphasis supplied).  Applying these elements, the Court should find that

8 Plaintiffs' action is barred under Nevada law.

9    First, there should be no dispute that the final judgments in the first actions are final and

10 valid.  *See* Exhibit G.  Second, Plaintiffs cannot credibly argue that this action is not based on the

11 same claims or parts thereof that could have been brought in the first actions.  Not only are the

12 NRS Chapter 608 claims identical to those pursued in the initial state court actions, the FLSA

13 claim, the fraud claim, and the conversion claim are all based on the same set of allegations as

14 the NRS Chapter 608 claim—namely that Defendants allegedly failed to pay Plaintiffs their

15 appropriate commissions.  (Compl. at ¶¶ 20-53.)  Indeed, the amount of the allegedly withheld

16 commissions is identical to amounts sought in the first actions.  (*Id.* at ¶¶ 15, 16); Exhibits C and

17 D.

18    Finally, the Court should find that Defendant Levy should have been named in the initial

19 state court actions and the Plaintiffs have not provided a good reason for doing so.  The

20 Complaint claims that Levy violated the FLSA and various provisions of NRS Chapter 608 in

21 allegedly failing to pay Plaintiffs certain commissions, converted the same, and allegedly

22 perpetrated a fraud to do so.  (*Id.* at ¶¶ 20-53.)  Accordingly, Levy should have been included as

23 a defendant in the original actions.[25]  Further, because of the allegedly close relationship between

24 Levy and TSFW (*id.* at ¶¶ 10, 11, 18), the Court should find that Plaintiffs have not provided a

25
26
27
28

[25] Indeed, Plaintiffs recognized this and attempted to belatedly treat Levy as a defendant to the actions (and resulting judgment-debtor) for the purposes of post-judgment discovery.  *See* **Exhibit H**, a true and correct copy of the Minute Order granting Levy's Motion for Relief from Order Granting Judgment Debtor Examination, attached hereto.  The Court granted relief to Levy and explicitly found that Levy was not a judgment-debtor despite Plaintiffs' eleventh-hour characterization of him as the same.

good reason for not including Levy as a defendant in the first actions.[26] The Nevada Supreme Court explained the same in *Weddell v. Sharp*, 2015 Nev. LEXIS 35, at *14 n. 2 (Nev. May 28, 2015), stating, "while a 'close and significant' relationship between defendants may be sufficient in some cases to show that a plaintiff lacked 'good reasons' to justify a second lawsuit, we are not persuaded that a close and significant relationship is always necessary to demonstrate that a plaintiff lacked good reasons to justify the second lawsuit." Because Plaintiffs have already taken their bite at the apple (and elected not to name Levy as a defendant in the first actions), they should not get a second.

**F.** **Doe/Roe Pleading is Improper in Federal Court**

Courts in the Ninth Circuit have recognized that "[g]enerally, 'Doe' pleading is improper in federal court" and is disfavored. *See, e.g., Buckheit v. Dennis*, 713 F. Supp. 2d. 910, 918 n. 4 (N.D. Cal. 2010) (quoting *Bogan v. Keene Corp.*, 852 F.2d 1238, 1239 (9th Cir. 1988)); *see also Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (upholding district court's dismissal of Doe defendants). Indeed, the Federal Rules of Civil Procedure do not contain a provision permitting a plaintiff's use of fictitious defendants. *See Fifty Assocs. v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970). The courts in this District are particularly opposed to Doe pleading. The court in *State Farm Mut. Auto Ins. Co. v. Ireland*, No. 2:07-CV-01541, 2009 U.S. Dist. LEXIS 116751, at *8 (D. Nev. Nov. 30, 2009) held the same, stating, "Pleading fictitious Doe defendants is improper in federal court." *Id.* Judge Hunt recognized this principle, holding that "[a] claim against Does has no effect in federal court," and "[d]ismissal without prejudice of the claims against the Doe defendants is proper." *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 643 (D. Nev. 2011). In violation of the Rules, Plaintiffs have improperly included in their Complaint Does 1-50 and Roe Corporations 1-50 as unidentified defendants. Accordingly, the Court should dismiss the unidentified Doe and Roe Defendants from this action.

---

[26] Plaintiffs cannot escape this result because they explicitly alleged in their Complaint that there exists a close relationship between Levy and TSFW. (Compl. at ¶¶ 9, 10.)

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

1

## V.     CONCLUSION

Based upon the foregoing, the Court should find that Plaintiffs' Complaint against Defendant Glenn Levy does not state a claim upon which relief may be granted.  Therefore, Defendant Glenn Levy respectfully requests that the Court grant the Motion in full and dismiss him from this suit.

Dated this 22nd day of June, 2015.

**SANTORO WHITMIRE**

  _/s/ Jason D. Smith_
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
*Attorneys for Defendant Glenn Levy*

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

**CERTIFICATE OF SERVICE**

  I hereby certify that, on the 22nd day of June, 2015, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **DEFENDANT GLENN LEVY'S MOTION TO DISMISS** postage prepaid (if U.S. Mail) and addressed to all parties and counsel as identified on the CM/ECF generated Notice of Electronic Filing.


         */s/ Rachel Jenkins*
         An employee of Santoro Whitmire

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SANTORO WHITMIRE**
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773