JASON J. BACH, ESQ.
Nevada Bar No. 7984
MICHAEL MASCARELLO, ESQ.
Nevada Bar No. 10673
THE BACH LAW FIRM, LLC
7881 West Charleston, Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BRYAN KENNY and GERARD AZOULAY,<br><br>Plaintiffs,<br><br>v.<br><br>TRADE SHOW FABRICATIONS WEST, INC., RON SUISSA, GLENN LEVY, DOES 1-50, and ROE Corporations 1-50,<br><br>Defendants. | Case No.2:15-cv-410 |

### **OPPOSITION TO DEFENDANT GLENN LEVY'S MOTION TO DISMISS**

COME NOW, Plaintiffs, by and through their attorneys of record, Jason J. Bach, Esq. and Michael Mascarello, Esq., of The Bach Law Firm, LLC, and hereby opposes Defendant Glenn Levy's Motion to Dismiss. Plaintiffs' opposition is based on the foregoing Points and Authorities, Plaintiffs' Complaint, all papers and pleadings on file herein, and any oral argument requested

///

///

///

from the Court.

DATED this 23rd day of July, 2015.

>THE BACH LAW FIRM, LLC
>  /s/ Michael Mascarello, Esq.
> JASON J. BACH, ESQ.
> Nevada Bar No. 7984
> MICHAEL MASCARELLO, ESQ.
> Nevada Bar No. 10673
> 7881 W. Charleston Blvd., Suite 165
> Las Vegas, NV 89117
> Attorney for Plaintiffs

I.  ARGUMENT

A.  **Standard on Motion to Dismiss**

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696.

District courts must apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.; Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider whether the factual

allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly,* 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**B.      Plaintiffs Have Properly Plead that Levy was Their Employer under the FLSA**

Plaintiffs' complaint alleges as follows:

10.     Defendant, Glenn Levy, is believed to be a resident of Belize. At all times relevant herein, Defendant was the owner, Secretary and Treasurer of Trade Show Fabrications West, Inc., a Nevada corporation, and Plaintiffs' employer pursuant to the FLSA 29 U.S.C. § 203(d).

18.     Glenn Levy was at all relevant times herein Plaintiffs' employer pursuant to the FLSA 29 U.S.C. § 203(d) as he is the Secretary and Treasurer and has an ownership interest in Trade Show Fabrications West, Inc. Defendant exercised control over the nature and structure of Plaintiffs' employment relationship, exercised economic control over the employment relationship, and is subject to individual liability.

*Complaint*, para. 10, 18

In *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir., 2009), the court found that where the individual exercises "control over the nature and structure of the employment relationship,"or "economic control" over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability. The court said that plaintiffs stated a claim under the FLSA against the CEO (70% owner), the CFO, and another officer (30% owner) who handled labor and employment matters for the corporation.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee ...." 29 U.S.C. § 203(d).

- 3 -

The Ninth Circuit has held that the definition of "employer" under the FLSA is not limited by the common law concept of "employer," but "`is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" *Boucher*, 572 F.3d at 1090-1091 (9th Cir., 2009) citing *Lambert v. Ackerley,* 180 F.3d 997, 1011-12 (9th Cir. 1999) (en banc) (quoting *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983)). *See also Real v. Driscoll Strawberry Assocs.,* 603 F.2d 748, 754 (9th Cir.1979). The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947). The touchstone is the "economic reality" of the relationship. *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961).

Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability. *Lambert,* 180 F.3d at 1012 (internal quotation marks and citations omitted). In *Lambert,* we upheld a finding of liability against a chief operating officer and a chief executive officer where the officers had a "'significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries;[and the responsibility to] maintain [ ] employment records.'" *Lambert,* 180 F.3d at 1001-02, 1012 (quoting the district court's jury instruction). "The evidence, moreover, strongly supports the jury's determination that both Ackerleys exercised economic and operational control over the employment relationship with the sales agents, and were accordingly employers within the meaning of the Act." *Id.* at 1012. *See also Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 34 (1st Cir.2007) (holding corporation's president personally liable where he had ultimate control over business's day-to-day operations and was the corporate officer principally in charge of directing employment practices); *United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 778-79 (6th Cir.1995) (president and 50 percent owner of corporation was "employer" within FLSA

where he ran business, issued checks, maintained records, determined employment practices and was involved in scheduling hours, payroll and hiring employees). *Boucher,* 572 F.3d at 1091.

In *Boucher*, the Court found Plaintiffs' allegations sufficient to survive a motion to dismiss regarding whether individual defendants, Villamor, Shaw, and Van Woerkom were "employers" for the purposes of the FLSA. In that case the plaintiffs alleged that defendant Villamor was responsible for handling labor and employment matters at the Castaways and held a 30 percent ownership interest; that defendant Shaw was chairman and chief executive officer of the Castaways and held a 70 percent ownership interest; and that defendant Van Woerkom was the Castaways' chief financial officer and had responsibility for supervision and oversight of the Castaways' cash management; and that all three defendants had "control and custody of the plaintiff class, their employment, and their place of employment." The Court found these allegations to be sufficient to withstand a motion to dismiss with regard to each defendant. *Id* at 1091.

Likewise in this case, Plaintiffs have alleged that Levy is the Secretary and Treasurer and has an ownership interest in Trade Show Fabrications West, Inc., that he also exercised control over the nature and structure of Plaintiffs' employment relationship and exercised economic control over the employment relationship. *Complaint,* para. 18. Defendant seems to suggest that Plaintiffs must meet some indefinite and impossible factual pleading standard and describe Levy's day to day, hour to hour job responsibilities in order to meet the pleading standard to show Levy is Plaintiffs' "employer" for the purposes of the FLSA. That is not the law. Defendants also rely upon *Adedapoidle-Tyehimba v. Crunch, LLC*, No. 13-cv-00225, 2013 U.S. Dist. LEXIS 113519, in which the plaintiff merely alleged that defendant co-owned the business where plaintiff was employed to show he was their employer. As is set forth in Plaintiffs' Complaint here, they have clearly alleged that Levy was significantly more involved in controlling their employment than simply owning

the business where they were employed.

Plaintiffs in this case have pled the Levy was their employer in even greater detail than the manner in which plaintiff in *Boucher* pled that defendants in that case were their employers. Thus, Plaintiffs here have met the pleading standard to survive a motion to dismiss.

**C.   Although Plaintiffs Received Minimum Wage for the Time Period at Issue, Plaintiffs are Entitled to One and a Half Times their Regular Rate of Pay for Hours they Worked in Excess of 40 Hours Per Week**

The FLSA states that an employer shall not employ an employee longer than 40 hours in a workweek unless the employee is compensated at a rate not less than one and one-half times the regular rate at which [the employee] is employed unless a particular exemption applies. 29 U.S.C. § 207(a)(1).

Plaintiffs have not plead this claim in their original complaint but can set forth facts showing particular weeks in which they worked in excess of 40 hours and for which they did not receive one and a half times their regular rate of pay for those hours worked. Under sec. 207 (e) "Regular rate" defined. As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee.

The Ninth Circuit recently decided the level of specificity the post-*Iqbal* pleading standard requires of plaintiffs bringing FLSA claims. *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014). While acknowledging that a plaintiff's inclusion of specific facts moves a complaint closer towards plausibility, the court "decline[d] to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA." *Id*. at 641. Recognizing that employers are in control of "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule," the court held that plaintiffs in FLSA "cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer." *Id*. at 641-46.

Even without approximating their overtime wages owed, plaintiffs must still at a minimum "specify at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id*. at 646.   *Johnson v. Pink Spot Vapors Inc.* (D. Nev., 2015).

In this case, Plaintiffs can identify specific workweeks during which they worked in excess of 40 hours and for which they did not receive one and a half times their regular rate of pay if they are permitted to file an amended complaint.

While Fed. R. Civ. P. 15 places leave to amend within the sound discretion of the trial court, the 9th Circuit has stressed that a court must remain guided by "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see also Conley v. Gibson*, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

The standard for granting leave to amend is generous. In *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1116 (9th Cir. 1975) the 9th Circuit reversed the district court's dismissal of plaintiff's count insofar as it denied leave to amend because it could "conceive of facts" that would render plaintiff's claim viable and could "discern from the record no reason why leave to amend should be denied." Similarly, in *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963) this Court held that leave to amend should be granted if underlying facts provide proper grounds for relief or if the complaint can be saved by amendment. Leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect." *Id*. at 790 (quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)).

Defendant has identified an exception to 29 U.S.C. § 207(a)(1) where an outside sales employee is exempt from the overtime protections of the FLSA set forth in *Christopher v. Smithkline Beecham Corp.*, 635 F.3d 383 (9th Cir., 2011).   That case inapplicable to the instant case.  In *Christopher*, the plaintiffs were pharmaceutical sales reps who conducted purely outside

sales meetings with physicians at their medical offices in order to obtain commitments to prescribe defendant's products. Defendant in that case had virtually no control over the hours or manner of work performed by their sales reps. In the instant case, Plaintiffs regularly worked from a single location operated and controlled by Defendant from where they conducted sales meetings. Defendant in this case has significantly more control over the hours and manner of employment of Plaintiffs and Plaintiffs in this case are not considered outside sales reps. Therefore, the outside sales exemption set forth by Defendant does not apply to Plaintiffs in this case.

Because Plaintiffs can identify specific workweeks during which they worked in excess of 40 hours and for which they did not receive one and a half times their regular rate of pay, leave to file an amended complaint should be granted to allow Plaintiffs to add a claim under 29 U.S.C. § 207(a)(1).

**D.  Plaintiffs Have Sufficiently Plead their Claim for Fraud against Defendant**

The elements of a fraud claim are: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Bulbman Inc. v. Nevada Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992); *Lubbe v. Barba*, 91 Nev. 596, 599, 540 P.2d 115, 117 (1975).

Plaintiffs plead that prior to performing work on behalf of their employers, Defendants falsely represented that Plaintiffs would receive commission payments for each sale they made. Plaintiff reasonably relied on such representations and made sales, earning revenues for the company. At the time of the false representations, Defendants never intended to provide Plaintiffs with their commission payments. *Complaint*, para. 37-39. This intent can be evidenced by the fact that Trade Show Fabrications West, Inc. was likely going under at the time Defendants, including

Levy, made the false representations and Levy knew that commissions would never be paid to Plaintiffs. Moreover, as the Secretary and Treasurer and owner of TSFW, Levy knew of the financial condition of the now presumably defunct company at that time and knew that the commissions would never be paid.

Accordingly, Plaintiffs have sufficiently plead their fraud claim against Levy and it is clear that the fraud claim goes well beyond a mere non-performance of an agreement as Defendant suggests. This claim should not be dismissed.

**E.  Plaintiffs have Properly Stated a Claim for Conversion**

"It appears that Nevada courts have not specifically discussed whether conversion claims may be based upon a failure to pay wages." Recent decisions from the California Supreme Court and Federal District Court have found that conversion claims may be based upon failure to pay wages. In *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 236 P.3d 346 (Cal. 2010), the court found that even though the California Labor Code Sec. 351, which prohibits an employer from withholding gratuities, does not provide a private right of action to recover gratuities, an employee could recover the gratuities through other means, such as an action for conversion. *Id.* at 603-604. This decision was based upon the fact that employees hold legal title to their earned but unpaid wages. See also *Sims v. AT&T Mobility Servs., LLC*, 955 F.Supp. 2d. 1110, 1119-1120 (E.D. Cal. 2013) ("employees have a vested property interest in the wages that they earn, failure to pay them is a legal wrong that interferes with the employee's title in the wages, and an action for conversion can therefore be brought to recover unpaid wages.")

In this case, regardless of whether Plaintiffs have a private cause of action under the Nevada labor statutes, Plaintiffs have a claim for conversion against Levy for their unpaid wages. Plaintiffs have alleged that Defendants, including Levy, withheld these sums and converted them by refusing to pay Plaintiffs, who owned and/or had the right to own and had the legal right to hold, possess,

and dispose of the withheld commissions and/or wages and Plaintiffs relied on this statutory right. Plaintiffs gained the right to hold, possess, and dispose of the compensation/wages/commissions as Plaintiffs earned these wages during the relevant time period. *Complaint,* para. 47. Levy interfered with Plaintiffs' title in their earned but unpaid wages because Levy himself has "economic control over the employment relationship" with Plaintiffs and as is set forth above, is Plaintiff's employer. *Id.*, para. 18. Accordingly, Plaintiff has properly set forth a conversion claim for their unpaid wages against Defendant, Levy, and his motion to dismiss this cause of action should be denied.

**F.     Claim-Splitting Does Not Apply as Plaintiffs' Claims in this Case Could Not Have Been Filed by the Labor Commissioner**

To determine whether a suit is duplicative, the Ninth Circuit borrows the test for claim preclusion. *Adams v. California Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir., 2007). In *The Haytian Republic,* "the true test of the sufficiency of a plea of `other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as `the thing adjudged,' regarding the matters at issue in the second suit." *Id.* quoting 154 U.S. 118, 124 (1894).

In assessing whether the second action is duplicative of the first, the Court examines whether the causes of action and relief sought, as well as the parties or privies to the action, are the same. *Id.* citing *The Haytian Republic,* 154 U.S. at 124 ("There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis, of the relief sought must be the same." (internal quotation marks omitted)); *Curtis,* 226 F.3d at 140 (holding that the trial court did not abuse its discretion in dismissing "*Curtis II* claims arising out of the same events as those alleged in *Curtis I,*" which claims "would have been heard if plaintiffs had timely raised them"); *Serlin,* 3 F.3d at 223 ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." (internal quotation marks

omitted)).  *Adams*, 487 F.3d at 689.

### 1. The Causes of Action and Parties Named in this Case are Different and Seek Different Relief than the First Action Filed by the Labor Commissioner

The first case brought by the Plaintiffs to which Levy refers was brought with the Office of the Labor Commissioner for unpaid wages against TSFW pursuant to the Nevada labor code N.R.S. 608, et al.  NRS 607.160 states that it is the duty of the Nevada Labor Commissioner to enforce the labor laws of the State of Nevada.

Therefore, the only claims brought against TSFW in the first action were claims for violations of various provisions of N.R.S. 608.  Those were only possible claims that could have been brought in the first action by the Labor Commissioner.

In this case, Plaintiffs have brought claims pursuant to the FLSA, a federal statute which the Nevada Labor Commissioner has no power to enforce and thus could not have brought in the first action.  Moreover, the FLSA allows the Plaintiffs to hold Levy personally liable for their unpaid wages as he was their "employer" pursuant to the standards set forth in FLSA and as described above in this brief.  Plaintiffs have also brought tort claims for fraud and conversion against Levy in this case, which could not have been brought in the first action by the Labor commissioner.

Thus, although the first action brought by the Labor Commissioner arises out of the same occurrence of TSFW and Levy failing to pay Plaintiffs' wages, the FLSA claims and tort claims seeking to hold Levy personally liable for the unpaid wages could not have been heard in the first action.

Accordingly, for these reasons, claim-splitting does not apply to this action and Levy's motion to dismiss the Complaint on that basis should be denied.

///

///

## II. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that Defendant's motion to dismiss is denied and that Plaintiff is permitted leave to file an amended complaint to add a cause of action under the FLSA overtime provisions.

DATED this 23rd day of July, 2015.

**THE BACH LAW FIRM, LLC**

By: */s/ Michael Mascarello, Esq.*
    JASON J. BACH, ESQ.
    Nevada Bar No. 7984
    MICHAEL MASCARELLO, ESQ.
    Nevada Bar No. 10673
    THE BACH LAW FIRM, LLC
    7881 W. Charleston Blvd., Suite 165
    Las Vegas, NV 89117
    Tel: (702) 925-8787
    Fax: (702) 925-8788
    Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of the District of Nevada Electronic Filing Procedures, I certify that I am an employee of The Bach Law Firm, LLC and that the following document, **OPPOSITION TO DEFENDANT GLENN LEVY'S MOTION TO DISMISS** was served via electronic service on this date, July 23, 2015 on the following parties:

Jason D. Smith
James M. Jimmerson, Esq.
SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250
Las Vegas, NV 89135
Attorney for Defendant Glenn Levy

Eric R. Olsen
GARMAN TURNER GORDON, LLP
650 White Drive, Suite 100
Las Vegas, NV 89119
Attorney for Defendants Trade Show Fabrications West, Inc.
And Ron Sussia

                                              /s/ Sandra Herbstreit
                                              An Employee of The Bach Law Firm, LLC