JASON D. SMITH, ESQ.
Nevada Bar No. 9691
jsmith@santoronevada.com
JAMES M. JIMMERSON, ESQ.
Nevada Bar No. 12599
jjimmerson@santoronevada.com
SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Telephone:   702/948-8771
Facsimile:   702/948-8773
*Attorneys for Defendant Glenn Levy*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRYAN KENNY and GERARD AZOULAY;<br><br>Plaintiffs,<br><br>v.<br><br>TRADE SHOW FABRICATIONS WEST, INC., RON SUISSA, GLENN LEVY, DOES 1-50, and ROE Corporations 1-50;<br><br>Defendants, | Case No.:   2:15-cv-00410-JCM-(VCF)<br><br>**REPLY IN FURTHER SUPPORT OF DEFENDANT GLENN LEVY'S MOTION TO DISMISS** |

Defendant GLENN LEVY ("Levy" or "Defendant"), by and through his undersigned counsel of record, hereby submits this Reply in Further Support of Defendant Glenn Levy's Motion to Dismiss which seeks dismissal Plaintiff BRYAN KENNY ("Kenny") and GERARD AZOULAY's ("Azoulay") (collectively, "Plaintiffs") Complaint in the above-captioned action pursuant to FED. R. CIV. P. ("FRCP") 12 (the "Reply"). This Reply is made and based upon the pleadings and papers on file herein, the below memorandum of points and authorities, and any argument of counsel the Court may permit at any hearing scheduled on this Motion.

Dated this 10th day of August, 2015.

**SANTORO WHITMIRE**

*/s/ Jason D. Smith*
JASON D. SMITH, ESQ. (NBN 9691)
JAMES M. JIMMERSON, ESQ. (NBN 12599)
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
*Attorneys for Defendant Glenn Levy*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiffs do not deny that they have sought and received relief for the alleged failure to receive commission payments from Defendant Trade Show Fabrications West, Inc. ("TSFW"). Indeed, in 2013, both Plaintiffs were granted judgment in their favor in amounts exceeding $200,000.00.  However, Plaintiffs are dissatisfied and now seek to recover against Defendant Glenn Levy for the same alleged unpaid commissions.  The law does not permit such tactics. Plaintiffs were required to bring all claims they had against all possible defendants when they sought judgment against TSFW in 2013.  Plaintiffs chose not to include Glenn Levy as a Defendant in that state court action and therefore they are prohibited from doing so here.

Notwithstanding that Plaintiffs may not seek recovery from Levy due to their choice not to pursue claims against him earlier, Plaintiffs' causes of action against Defendant Glenn Levy should also be dismissed because they simply have no merit.  Despite their pleas to the contrary, Plaintiffs' four claims against Levy ([1] violation of the Fair Labor Standards Act ("FLSA"), [2] violation of NRS Chapter 608, [3] fraud, and [4] conversion) are fatally flawed and warrant dismissal.

As is evident from Plaintiffs' Response to the Motion, Plaintiffs outright concede that half of their claims are fatally flawed and should be dismissed.  For example, Plaintiffs concede that they have no claim for alleged violations of NRS Chapter 608 and completely fail to respond to the Motion as to this claim.  Furthermore, Plaintiffs expressly admit that they were paid minimum wage and therefore their FLSA § 206 claim must be dismissed with prejudice. Curiously, Plaintiffs now claim that they have another FLSA claim based on the alleged failure to pay minimum wage and they seek to amend their Complaint to add this claim. Notwithstanding that such a claim would be meritless if made, Plaintiffs may not seek such leave in the form of a response to a motion to dismiss.  Instead, they must seek leave by way of separate motion that is compliant with FRCP 15 and LR 15-1.

As to Plaintiffs' claim for fraud, it should be dismissed because it fails to satisfy the heightened pleading standard from FRCP 9(b).  The Complaint does not identify the specific

- 2 -

"who, what, where, when, and how" of the alleged fraud, and instead lumps all Defendants together when alleging wrongdoing. Further, the Complaint is devoid of allegations which could create any inference that Levy intentionally misrepresented Plaintiffs' compensation. Implicitly admitting that this is true, Plaintiffs make additional allegations in their Response to bolster their claim. However, because such new allegations were not contained within the Complaint, they are not properly before the Court and may not be considered when deciding the Motion. Because the fraud claim is insufficiently pled, it should be dismissed.

Finally, Plaintiffs' claim for conversion should be dismissed because it is not a viable claim for recovery of unpaid wages. Nevada law is clear: one may not seek tort relief for an alleged failure to comply with contractual obligations. Because the failure to pay wages is such a contractual obligation, recourse for the same is unavailable in tort. Furthermore, conversion is a claim for recovery of specific, identifiable property, and not for a simple debt. Courts across the country apply this reasoning and dismiss conversion claims for unpaid wages. Knowing that Nevada does not permit a plaintiff to state a claim for conversion for allegedly unpaid wages, Plaintiffs cite to foreign authority in support of their argument. However, Plaintiffs' cited authority is of no assistance to them. None of the cases they cite affirmed the denial of a motion to dismiss for a claim for conversion of unpaid wages. Without being able to cite a single case which denies a motion to dismiss, Plaintiffs are asking this Court to do something that has not been done—allow a claim for conversion for allegedly unpaid wages to proceed. The Court should not accept Plaintiffs' invitation and instead it should grant Levy's Motion to Dismiss.

## II.   LEGAL ARGUMENT

### A.   <u>Plaintiffs Concede Several Key Points in Their Response</u>.

Plaintiffs fail to respond to, and therefore concede, several significant issues raised in Levy's Motion. First, Plaintiffs do not dispute that they do not have any valid claims under NRS Chapter 608 against Levy. As stated in the Motion, Levy is not an employer under NRS 608.011 and, even if he were, Plaintiffs have no private right of action to enforce the provisions of NRS Chapter 608. Second, Plaintiffs do not dispute that they were paid minimum wage and thus do

- 3 -

not have a minimum wage claim under FLSA § 206. As articulated below, these concessions are fatal to these claims and thus the Court should dismiss them with prejudice.[1]

**B.     Plaintiffs' FLSA Claim Should be Dismissed.**

The Court should dismiss the FLSA claim with prejudice as Plaintiffs were paid minimum wage. Plaintiffs concede that the Complaint fails to establish a minimum wage claim under the FLSA and in fact, explicitly admit, "Plaintiffs received minimum wage for the time period at issue." (Resp. at 6.) By virtue of this admission, the Court should dismiss Plaintiffs' FLSA § 206 claim with prejudice.

In an attempt to rescue some remnant of an FLSA claim, Plaintiffs suggest, for the first time, that Levy violated the FLSA in failing to ensure that Plaintiffs were properly paid overtime. Plaintiffs expressly acknowledge that this was not pled in the Complaint, stating, "Plaintiffs have not pled this claim in their original complaint…" (*Id.*) In so admitting, Plaintiffs seek leave to amend their Complaint to add a claim for failure to pay overtime under the FLSA. However, Plaintiffs' request is not properly before the Court and should thus be denied at this time.

In seeking to amend their Complaint to add an entirely new cause of action, Plaintiffs must file a motion to seek leave to amend their complaint pursuant to FRCP 15 and LR 15-1; making such a request in a response to a motion to dismiss is inappropriate. As the court in *Walsh v. Countrywide Home Loans, Inc.*, No. C 09-0446, 2009 U.S. Dist. LEXIS 41591, at *9 (N.D. Cal. May 1, 2009) held, "it is improper to seek leave to amend under Rule 15 by embedding such request in a response to a motion to dismiss." *Id.*; *see also Areas USA SJC, LLC v. Mission San Jose Airport, LLC*, No. C11-04487, 2012 U.S. Dist. LEXIS 70009, at *15 (N.D. Cal. May 18, 2012) ("To the extent defendant intends to assert new or different claims for relief or add new parties, it must make an appropriate application pursuant to FED. R. CIV. P. 15."); *Vann v. Aurora Loan Servs. LLC*, No. 10-cv-04736, 2011 U.S. Dist. LEXIS 60223, at *25 (N.D. Cal. June 3, 2011) ("Plaintiff may not add new causes of action or parties without seeking leave of the Court or obtaining Defendant's

---

[1] Incidentally, Plaintiffs do not respond to Levy's authority holding that Doe and Roe pleading is improper and thus the Court should dismiss the Doe and Roe claims.

- 4 -

permission by stipulation, pursuant to Federal Rule of Civil Procedure 15."). Accordingly, the Court should dismiss with prejudice the FLSA § 206 claim pled in the Complaint and deny any further request within the Response to allow Plaintiffs to add an overtime claim to the Complaint..

Notwithstanding that the FLSA claim should be dismissed as Plaintiffs admit that they were paid minimum wage, the claim should also be dismissed because Plaintiffs fail to properly establish that Levy qualifies as an employer under the FLSA. The Complaint, even when construed in Plaintiffs' favor, simply contains insufficient facts that could plausibly establish that Levy was Plaintiffs' employer under the FLSA.

Plaintiffs do not dispute that the determination of whether an individual qualifies as an employer under FLSA is a fact-intensive inquiry. (Mot. at 8, citing this Court's decision in *Orquiza v. Walldesign, Inc.*, No. 2:11-cv-1374 JCM, 2013 U.S. Dist. LEXIS 84730, at *8 (D. Nev. June 14, 2013).) Indeed, there is no dispute that the Court must consider the following relevant factors when making such a determination: (1) the power to hire and fire employees; (2) supervision and control of employee work schedules or conditions of employment; (3) determining the rate and method of payment; and, (4) maintaining employment records. *Id*.

However, the Complaint is devoid of any facts that relate to any of these factors. Instead, the Complaint simply alleges that Levy is a shareholder and officer of TSFW and in a conclusory fashion alleges that Levy "exercised control over the nature and structure of Plaintiffs' employment relationship, exercised economic control over the employment relationship, and is subject to individual liability." (Compl. at ¶ 18.) However, such conclusory allegations are insufficient to state a claim under the FLSA. *See Adedapoidle-Tyehimba v. Crunch, LLC*, No. 13-cv-00225, 2013 U.S. Dist. LEXIS 113519, at *14-15 (N.D. Cal. Aug. 9, 2013); *DiNicola v. SEIU, Local 503*, No. 08-6317, 2011 U.S. Dist. LEXIS 86712, at *13-14 (D. Or. Aug. 5, 2011); *Brouillette v. Montague Elem. Sch. Dist.*, NO. 2:14-840, 2014 U.S. Dist. LEXIS 74384, at*3 (E.D. Cal. May 29, 2014); *Wood v. TriVita, Inc.*, No. CV-08-0765, 2009 U.S. Dist. LEXIS 63996, at *9 (D. Ariz. June 22, 2009).

Despite this authority holding that such bare bones allegations are inadequate to state a claim, Plaintiffs erroneously maintain that the Complaint sufficiently establishes Levy's status as

- 5 -

1  an employer under the FLSA.  Citing to *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009),
2  Plaintiffs liken their Complaint to that the Ninth Circuit has held to be sufficient.  However,
3  Plaintiffs' own description of the facts in *Boucher* makes clear that the complaint in *Boucher*
4  contained many more facts on this issue than the Complaint in this action.  Indeed, Plaintiffs
5  acknowledge that in *Boucher* the complaint alleged that (1) the defendants "handl[ed] labor and
6  employment matters;" (2) they "had responsibility for supervision and oversight of the
7  [company's] cash management;" and (3) "all three defendants has control and custody of the
8  plaintiff class, their employment, and their place of employment."  (Resp. at 5.)  Plaintiffs'
9  Complaint does not contain any similar allegations and thus the Court should find that it fails to
10 establish that Levy was an employer under the FLSA.

11 **C.  Plaintiffs Have No Cognizable NRS Chapter 608 Claim.**

12 The Court should dismiss Plaintiffs' NRS Chapter 608 claim against Levy because (1)
13 Levy is not an employer as defined by NRS 608.011; and (2) there is no private right of action to
14 enforce violations of NRS 608.016, 608.190, and 608.040.  As the Court knows, the Nevada
15 Supreme Court held in *Boucher v. Shaw*, 124 Nev. 1164, 1170, 196 P.3d 959, 963 (2008) that
16 individual corporate officers or managers are not personally liable for unpaid wages under NRS
17 Chapter 608.  Further, this Court, along with others in the District have held that there is no
18 private right of action to enforce violations of NRS 608.016, 608.190, and 608.040.  *See e.g.*
19 *Dannenbring v. Wynn Las Vegas, LLC*, 907 F. Supp. 2d 1214, 1218-19 (D. Nev. 2013).
20 Plaintiffs altogether fail to respond to this authority and is thus an admission that the Motion is
21 meritorious on this issue.  *See Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043,
22 1053 (D. Nev. 2004) ("Plaintiffs concede this point by virtue of their failure to respond to it.").
23 The Court should dismiss the claim with prejudice.

24 **D.  The Complaint's Fraud Claim is Woefully Insufficient.**

25 Plaintiffs' claim for fraud should be dismissed as the Complaint fails to comply with the
26 heightened pleading requirements of FRCP 9(b). As enunciated in the Motion, the Complaint
27 fails to set forth particularized allegations establishing the "who what, when, where, and how of
28 the misconduct charged…"  (Mot. at 18, citing *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d

- 6 -

1047, 1055 (9th Cir. 2011).) The Complaint never identifies any particular communication made by any particular defendant as the basis of the fraud claim. Instead, the Complaint inappropriately groups all Defendants together when making the fraud allegations. The Ninth Circuit has held such pleading to be defective, stating, "Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). Plaintiffs wholesale ignore this authority and analysis in their Response and thus the Court should dismiss the claim for this reason alone. *See Herrera*, 298 F. Supp. 2d at 1053.

Additionally, the Court should dismiss the fraud claim as the Complaint lacks particularized allegations explaining how the alleged statements concerning the payment of commissions were false at the time they were made. Indeed, the Complaint contains no facts establishing that Levy had no intention to be bound or fulfill his promises when the representations were made. Without such facts, the fraud claim should be dismissed. *See In re Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension Fund GCC/IBT v. Deleage*, 697 F.3d 869, 876 (9th Cir. 2012); *HSU v. Oz Optics, Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002); *Tallman v. First Nat'l Bank of Nevada*, 66 Nev. 248, 259, 208 P.2d 302, 307 (1949).

Notwithstanding Plaintiffs' failure to address the problem of group pleading discussed above, Plaintiffs erroneously argue that the fraud claim should survive and that the Complaint sufficiently sets forth facts from which fraud can be inferred. Specifically, Plaintiffs argue:

> Defendants never intended to provide Plaintiffs with their commission payments. Complaint, para. 37-39. This intent can be evidenced by the fact that Trade Show Fabrications West, Inc. was likely going under at the time Defendants, including Levy, made the false representations and Levy knew that commissions would never be paid to Plaintiffs. Moreover, as the Secretary and Treasurer and owner of TSFW, Levy knew of the financial condition of the now presumably defunct company at that time and knew that the commission would never be paid.

(Resp. at 8-9.)

The foregoing "evidence" of fraudulent intent does not rescue the Complaint from dismissal because those allegations are not contained within the Complaint. Indeed, the Complaint makes no mention of TSFW "likely going under" when the alleged representations

- 7 -

were made.  Nor does the Complaint allege that Levy knew that the "financial condition" of TSFW would mean that he "knew that the commissions would never be paid."  These are brand new allegations first made in the Response to the Motion.  Thus, the Court may not consider them for the purposes of deciding the Motion to Dismiss.  As this Court recognized in *Tomkiel v. Hartford Cas. Ins. Co.*, No. 2:13-CV-1888-JRM, 2014 U.S. Dist. LEXIS 51199, at *7 (D. Nev. Apr. 14, 2014), "Plaintiff[s] cannot rely on facts that [they] neglected to include in [the] complaint by referring to them in [the] opposition."  *Id.*, citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  Because the Complaint does not contain any allegations that would substantiate the allegation that "Defendants never intended to provide Plaintiffs with their commission payments," the Court should dismiss the fraud claim.  (Compl. at ¶ 37.)[2]

### E.   **The Court Should Dismiss Plaintiffs' Conversion Claim.**

Plaintiffs' claim for conversion fails because (1) Nevada does not permit a claim for conversion for unpaid wages; and (2) the Complaint fails to set forth facts that Levy, individually, converted Plaintiffs' wages.  For each of these reasons, Plaintiffs' claim for conversion should be dismissed as against Levy.

#### *1.   Nevada Does Not Recognize a Conversion Claim for Unpaid Wages.*

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property."  *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 5 P.3d 1043, 1048 (2000).  However, conversion is distinct from the non-payment of debt.  Under common law, "[n]onpayment of a debt is of course not a conversion of the amount owed." *Id.*, 1 Dobbs, Torts § 72 at 205.  Indeed, "[t]he defendant who fails to pay a debt is not a converter of the money withheld; he is simply liable or not according to the contract's terms…" *Id.*, 3 Dobbs, Torts §

---

[2] Defendants do not concede that if these new allegations raised in the Response were actually contained in the Complaint that the fraud claim would survive.  As discussed above, the Complaint still does not make the appropriate particularized allegations required by FRCP 9(b).  The new allegations do not remedy this defect; nor do they plausibly create an inference of fraud.  Without even further allegations, Plaintiffs do not have a viable fraud claim capable of surviving a motion to dismiss.

- 8 -

713 at 813-14.  Nevada law is consistent with these principles and thus a conversion claim may not be based upon allegedly unpaid wages.

Nevada law is clear that where the duty to act arises from the parties' contract, the failure to properly discharge that duty cannot be enforced through a tort claim, such a conversion.  *See Walser v. Moran*, 42 Nev. 111, 160, 180 P. 492, 1153, 173 P. 1149, 1153 (1918) ("if there be no legal duty except as arising from the contract…there is no tort, and the party must rely upon the agreement alone.").  Therefore, because employment is a contractual relationship (*see Vancheri v. GNLV Corp.*, 105 Nev. 417, 421, 777 P.2d 366, 369 (1989)), the failure of an employer to pay wages creates an action in contract, not an action in tort.[3]  Importantly, Plaintiffs do not dispute this authority and analysis.[4]

Without Nevada legal authority to support their claim, Plaintiffs cite to two cases from California as the basis for their opposition to the motion.  However, an examination of these two cases reveals that they offer little assistance to Plaintiffs.  First, Plaintiffs cite to *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 236 P.3d 346 (Cal. 2010).  In *Lu*, the California Supreme Court held that employees may sue under a theory of conversion if an employer withholds **gratuities** from them.  The court never considered whether a conversion claim could be brought against an employer that withholds **wages** from an employee.  The distinction between gratuities and wages is dispositive on this issue.

Gratuities are voluntary payments made from a patron to an employee, the amount of which is left to the discretion of the patron.  Conversely wages are obligatory payments made from an employer to an employee, the amount of which is set by agreement between the

---

[3] Indeed, even when the failure to pay wages implicates duties from NRS Chapter 608, the recourse for unpaid wages lies in a contract action, not one grounded in tort.  *See Miranda v. O'Reilly Auto. Stores, Inc.*, No. 2:14-cv-878, 2014 U.S. Dist. LEXIS 118931, at * 16 (D. Nev. Aug. 26, 2014) ("the private right of action that can be implied under 608.140 only reasonably includes pre-wage-and-overtime-law contractual claims…").

[4] Plaintiffs likewise do not dispute that Nevada's law concerning contract and tort claims falls in line with the states that have explicitly considered this issue.  As articulated in the Motion, the law of New York, Kansas and Indiana prohibit the assertion of conversion claims for failure to pay wages.  (Mot. at 22-23.)  Without any authority or explanation as to why Nevada would follow one federal district court case from California, the Court should find that Plaintiffs have not stated a claim for conversion and dismiss the same.

- 9 -

1 employer and employee. If an employer intercepts the payment of a gratuity to an employee, the
2 employer commits conversion by taking a particular payment made by a patron away from the
3 intended recipient, the employee.[5] This is not the case if an employer withholds wages from an
4 employee. There is no "interception" or "theft" of money, but instead simply a debt owed by the
5 employer to the employee. Because this action relates to allegedly unpaid wages and not the
6 interception of gratuities, it is not properly the subject of common law tort claims such as
7 conversion.

8 Plaintiffs cite to a second case, *Sims v. AT&T Mobility Servs., LLC*, 955 F. Supp. 2d 1110
9 (E.D. Cal. 2013), however, *Sims* is similarly of little help to Plaintiffs' conversion claim. First,
10 in *Sims*, the court dismissed the conversion claim because "there [was] no indication in the
11 complaint that the wages sought constitute an identifiable sum…[and] [a]n allegation to that
12 effect is a necessary element of a properly pled conversion claim." *Id*. at 1120. Here, Plaintiffs
13 do not allege an identifiable sum that was allegedly converted and thus, even under *Sims*, the
14 claim should be dismissed. Second, *Sims* based its decision on *Lu*, but did not consider the
15 distinction between gratuities and wages when rendering its decision. Had the court considered
16 the differences between gratuities and wages, it likely would have ruled the other way. Plaintiffs
17 have not cited, nor can Levy find, any caselaw that similarly takes the reasoning in *Lu* pertaining
18 to gratuities and applies it to wages for the purposes of a conversion claim. Accordingly, it is
19 questionable whether even the California Supreme Court would find that unpaid wages may be
20 recovered by a claim for conversion.

21 Moreover, setting aside the question of whether the California Supreme Court would treat
22 a dispute over unpaid wages the same as one concerning intercepted gratuities for the purposes
23 of asserting a conversion claim, both California cases cited by Plaintiffs only recognized the
24 viability of a conversion claim against the corporate entity employer, and not against an

---

[5] It is important to note that the duty not to steal from one's own employees arises from common law and not any contract with the employee, thus recovery for violation of this duty lies in tort, not contract. This differs from the duty to pay wages, which arises from contract, and is remedied by an action in contract, not tort.

- 10 -

1  individual officer or shareholder of the employer.  Without any legal support for a conversion
2  claim being asserted against an officer of the employer, Plaintiffs' claim should be dismissed.

### 2. *Plaintiffs Have Not Pled a Conversion Claim Against Levy.*

Finally, notwithstanding the fact that a claim for conversion for unpaid wages is not cognizable, the Court should dismiss the claim because as it is pled, Levy, individually, could not have converted the commissions.  The Complaint alleges, "Defendants instead kept the money owed to Plaintiffs for their own use, using such money for other purposes and distributing it elsewhere." (Compl. at ¶ 46.)  However, it was TSFW, not Levy, that allegedly had the duty to make the commission payments.  (*Id*. at ¶ 12.)  Accordingly, Levy could not have "kept" the payments.  To the extent any Defendant allegedly "kept" Plaintiffs' commissions, the only Defendant capable of "keeping" the same is TSFW, the entity that was purportedly obligated to make the payments to Plaintiffs.[6]  Because Levy is not responsible for the debts and/or liabilities of TSFW pursuant to NRS 78.747 he is not liable for any alleged conversion.

In its Response, Plaintiffs attempt to bootstrap the allegations from the FLSA claim that Levy had "economic control over the employment relationship" to establish Levy's liability for conversion. (Resp. at 10).  However, the Nevada Supreme Court has explicitly rejected attempts to make officers or shareholders responsible for corporate liabilities under FLSA principles.  Indeed, in *Boucher v. Shaw*, 124 Nev. at 1170, the Nevada Supreme Court rejected an attempt to make individual officers and managers responsible for unpaid wages, stating, "Generally, a corporate officer is not considered the employer responsible for creating the contractual employment relationship and is not personally liable for a breach of that relationship.  Under Nevada corporate law, individual liability does not extend to officers, directors, or stockholders of a corporation '[e]xcept as otherwise provided by specific statute.'"  *Id*.  Because conversion is a Nevada common law claim, it is subject to Nevada's law on the limitation of officer and

---

[6] Plaintiffs' theory of conversion is particularly problematic in light of the group pleading "Defendants," without identification of any particular Defendant's actions in the alleged conversion.  As explained in the Motion, but Plaintiffs did not dispute, the nature of the claim is such that only one Defendant could have committed the alleged tort in that only the Defendant obligated to pay Plaintiffs could have "kept" or "refused to pay" the commissions.  (Mot. at 23, n. 24.)

1  shareholder liability.  Therefore, the Court should reject Plaintiffs' attempt to mix and match
2  allegations in the Complaint in order to manufacture a viable tort claim.  Plaintiffs' claim for
3  conversion should be dismissed with prejudice.

4  **F.     Plaintiffs' Complaint is Barred as Inappropriate Claim-Splitting.**

5  The Complaint should be dismissed with prejudice because Plaintiffs have already
6  pursued one action to judgment based on the alleged nonpayment of commissions.  (Mot. at 24-
7  26.)  Seemingly dissatisfied with the result in the prior action, Plaintiffs have now commenced
8  this subsequent action against two additional parties, Ron Suissa and Glenn Levy.  This is a
9  classic example of improper claim-splitting warranting dismissal.

10  Plaintiffs do not dispute that a party may not split their claims into several suits.  Indeed,
11  in their Response, Plaintiffs cite to *Adams v. California Dep't of HealthServs.*, 487 F.3d 684,
12  688-89 (9th Cir. 2007), which holds that subsequent actions are barred if they "are related to the
13  same set of facts [of the prior action] and [where both actions] could conveniently be tried
14  together."  *Id*. at 689.  Plaintiffs also do not dispute that claim preclusion bars the assertion of
15  any theory of recovery that could have been asserted in the first action.  (Mot. at 25, citing *Robi
16  v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).)

17  Furthermore, Plaintiffs concede that Nevada applies the bar to claim-splitting broadly.  In
18  fact, recently the Nevada Supreme Court held that if a subsequent action is based on the same
19  claims or any part of them that were or could have been brought in the first case, and the parties
20  or their privies are the same in the instant lawsuit as they were in the previous lawsuit, or the
21  defendant can demonstrate that he or she should have been included as a defendant in the earlier
22  suit and the plaintiff fails to provide a good reason for not having done so.  (*Id*. at 25-26, citing
23  *Weddell v. Sharp*, 2015 Nev. LEXIS 35, *13-15, 131 Nev. Adv. Op. 28 (Nev. May 28, 2015).)
24  Because Plaintiffs' claims against Levy could have been brought in the first action in Nevada
25  State Court, Plaintiffs are now barred from pursuing this second action.

26  Plaintiffs do not dispute that this action is based on the same facts and events as those
27  brought earlier in Nevada State court.  Indeed, they expressly admit, "the first action brought by
28  the Labor Commissioner arises out of the **same occurrence** of TSFW and Levy failing to pay

- 12 -

Plaintiffs' wages…" (Resp. at 11.) (emphasis supplied) Plaintiffs instead argue, "claim-splitting does not apply as Plaintiffs' claims in this case could not have been filed by the Labor Commissioner." (*Id*. at 10.) This argument misses the mark.

Plaintiffs mistakenly conflate the proceeding before the Nevada Labor Commissioner with the civil actions they filed in Nevada State court subsequent to that proceeding. While the proceedings before the Labor Commissioner were necessarily confined to the alleged violations of NRS Chapter 608, it is not the proceeding before the Nevada Labor Commissioner that is tested when determining whether improper claim-splitting has occurred. It is the subsequent actions in state court that Plaintiffs filed against TSFW that constitute the "prior actions" in which Plaintiffs were expected to bring all claims against all possible defendants relating to the alleged unpaid commissions. Instead of bringing all of the claims they believed they had against all of the Defendants, Plaintiffs consciously elected to limit their actions against TSFW to the alleged violations of NRS Chapter 608 arising from the alleged unpaid commissions. Nothing prevented Plaintiffs from making the claims they have brought in this action against TSFW, Levy and Suissa in those original actions. Plaintiffs were permitted, and in fact required, to bring all of their claims against Levy and Suissa in those prior actions—the failure to do so bars this action against Levy.

### III.   CONCLUSION

Based upon the foregoing, the Court should find that Plaintiffs' Complaint against Defendant Glenn Levy does not state a claim upon which relief may be granted. Therefore, Defendant Glenn Levy respectfully requests that the Court grant the Motion in its entirety and dismiss Defendant Levy from this action.

Dated this 10th day of August, 2015.

**SANTORO WHITMIRE**

 */s/ Jason D. Smith*
JASON D. SMITH, ESQ. (NBN 9691)
JAMES M. JIMMERSON, ESQ. (NBN 12599)
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
*Attorneys for Defendant Glenn Levy*

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that, on the 10th day of August, 2015, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **REPLY IN FURTHER SUPPORT OF DEFENDANT GLENN LEVY'S MOTION TO DISMISS** postage prepaid (if U.S. Mail) and addressed to all parties and counsel as identified on the CM/ECF generated Notice of Electronic Filing.

*/s/ Rachel Jenkins*
An employee of Santoro Whitmire